UNITED STATES

v.

Jeffrey W. GARRETT, 307 62 2099, Corporal (E-4), U.S. Marine Corps.

NMCM 82 1962.

U. S. Navy-Marine Corps Court of Military Review.

Argued 8 Oct. 1981.

Decided 17 Nov. 1982.

MAJ James P. Axelrod, USMC, Appellate Defense Counsel.

LT Daniel Lippman, JAGC, USNR, Appellate Defense Counsel.

LCDR Michael R. McGuire, JAGC, USN, Appellate Government Counsel.

Before CEDARBURG, C.J., and GORMLEY and MAY, JJ.

PER CURIAM:

At a special court-martial with officer members, appellant was found guilty, contrary to his pleas, of two specifications under Article 92, Uniform Code of Military

Justice (UCMJ), 10 U.S.C. § 892, alleging possession and introduction of 386 grams of marijuana on board Marine Corps Base, Camp Pendleton, California. The members sentenced appellant to be reduced to the lowest enlisted pay grade, to forfeit $334.00 pay per month for 6 months, and to be separated with a bad-conduct discharge. That sentence was approved by the reviewing authorities below.

Appellant now raises three assignments of error for our consideration, only one of which merits discussion.

THE APPELLANT SUFFERED MATERIAL PREJUDICE WHEN THE MILITARY JUDGE OVERRULED APPELLANT'S MOTION TO SUPPRESS.

Our resolution of that issue renders the remaining assignments of error moot.

At approximately noon on 16 July 1981, a roving military police patrol observed a group of four individuals engaged in conversation beside two parked cars, at a location aboard Marine Corps Base, Camp Pendleton, California, well-frequented by persons using or trafficking in controlled substances. Considering the situs of the observed conversation and the perceived improbability of four Marines meeting at that location during working hours, Corporals [M] and [A] left their vehicle and approached the group on foot. Corporal [M] testified at trial that their original intent was merely to inquire as to the group's activities. According to [M], the military police "didn't have the impression to apprehend anybody, just to go up there and see what was taking place."

After approaching to within 8 to 10 feet of the Marines, Corporal [M] ordered all four individuals to "freeze". Almost immediately thereafter, [M] observed appellant begin to slip what appeared to be a pipe

into his front trouser pocket. Corporal [M] directed appellant to take the object out of his pocket and let him see what was in the pipe. Appellant did as ordered and, in response to the military policeman's question, acknowledged that the substance in the bowl was "home grown." Corporal [M] immediately placed appellant under military apprehension for suspected possession of marijuana. The evidence at trial was uncontroverted in establishing that the decision to place appellant under apprehension was made only after [M] was handed the pipe and observed what he considered to be marijuana in the bowl. Corporal [M] then requested, and received, appellant's consent to search the interior of his camper. That search revealed sixteen plastic bags of marijuana hidden in a gym bag and a portable cooler. At no time was appellant apprised of his rights under Article 31, UCMJ, 10 U.S.C. § 831, and for that reason, the Government conceded the inadmissibility of any oral statements made by appellant.[1]

In denying the defense motion to suppress, the military judge ruled that the military policeman's initial order that the group "freeze" represented a valid investigatory stop encompassed by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The request that appellant produce his pipe was made in the context of that investigatory stop and thus, according to the military judge, was not a seizure. With the discovery of the pipe and its suspected contents, the military police, in the view of the trial judge, acquired probable cause to apprehend appellant. The military judge further specifically held that appellant's decision to permit the search of his camper was an expression of voluntary consent and not a mere submission to police authority.

---

1. The Government argues that production of the pipe was not a "statement" falling within the warning requirements of Article 31(b), UCMJ, analogizing to requests for handwriting or voice exemplars and the taking of blood samples. *See United States v. Lloyd,* 10 M.J. 172 (C.M.A.1982); *United States v. Armstrong,* 9 M.J. 374 (C.M.A.1980). While we find it difficult to characterize appellant's surrender of his pipe as a "neutral act" and not one "regarding" any offense within the meaning of Article 31(b), *Lloyd, supra* at 175, we need not resolve this issue in the context of present case. *See United States v. Kinane,* 1 M.J. 309 (C.M.A. 1976); *United States v. Pyatt,* 22 U.S.C.M.A. 84, 46 C.M.R. 84 (1972); *United States v. Nowling,* 9 U.S.C.M.A. 100, 25 C.M.R. 362 (1958).

■ As the military judge's special findings make clear, the admissibility of the evidence seized in appellant's camper turns on [M]'s acquisition of the pipe and the timing of appellant's apprehension. The record does reveal "specific and articulable facts, together with rational inferences from those facts," from which the military police could reasonably conclude that some minimal investigation was warranted, thus justifying the brief detention of the four Marines. *Terry, supra* at 21, 88 S.Ct. at 1880. *See also United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Yet the greater intrusion arising with the demand for the acquisition of appellant's property exceeded the narrow parameters established in *Terry v. Ohio.* Contrary to the special findings at trial, Corporal [M]'s demand for the pipe constituted a search within the meaning of the Fourth Amendment. *United States v. Kinane,* 1 M.J. 309 (C.M.A.1976). That broader intrusion can not be rationalized as a mere "investigatory request" nor analogized to a "frisk", for [M] plainly had no reason to believe that he was dealing with individuals who were armed and dangerous. *Terry, supra* 392 U.S. at 27, 88 S.Ct. at 1883. *See* Mil.R.Evid. 314(f)(2).

Conceding that appellant's surrender of his property was encompassed by the Fourth Amendment, the Government suggests that the examination of the pipe was permissible as a search incident to lawful apprehension. *See* Mil.R.Evid. 314(g). The record clearly establishes that appellant was placed in apprehension *only* after the pipe had been produced and examined. The question of whether police action constitutes an apprehension "is primarily one of fact to be resolved by the fact finders." *Kinane, supra* at 314. In this respect, the testimony of the two military policemen, Corporal [M] and Corporal [A], at trial was quite specific in describing the sequence of events:

(Questions by the military judge to Corporal [M]:)
Q. You placed these individuals under apprehension and then you came up and received the pipe from Corporal Garrett; is that correct?

A. No sir. I didn't place them under apprehension until I found the pipe and saw the substance that was in the pipe.
(Questions by trial counsel to Corporal [A]:)
Q. Okay. After Corporal [M] told him to take it out of his pocket, what happened?
A. Yes, sir. Corporal [M] then let me see it. He just, you know, just turned it over to the side so I could view it and it had particles of a green substance chopped into little, you know, little particles of green substance. Possession of suspected marijuana that you know, we thought it was at the time.
Q. All right. Who spoke next?
A. At that time Corporal [M] placed the individual under military apprehension for possession of suspected marijuana and Corporal [M] told the individual that you know, that he's under military apprehension.

Corporal [M]'s command that the group "freeze", while clearly intended to restrict the Marines' freedom of movement, did not imply the degree of permanent deprivation of liberty considered characteristic of custodial arrest or apprehension. *Id.* The factual complexities which often surround the determination of whether and when a custodial arrest or apprehension occurs are well-known. *United States v. Texidor-Perez,* 7 M.J. 356, 358 (C.M.A.1979). We need not resolve that question in the instant case for our examination of the record convinces us that Corporal [M] acted without probable cause to apprehend in searching appellant's pipe.

■ The sequence of search and apprehension may not be significant where probable cause exists, and arrest follows immediately on the heels of the search. *United States v. Acosta,* 11 M.J. 307 (C.M.A.1981), citing *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Yet probable cause to apprehend remains an essential prerequisite. Probable cause is presumed to exist where circumstances

would "warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). While that standard does not require proof beyond a reasonable doubt, the Fourth Amendment contemplates something beyond bare suspicion. *United States v. Powell*, 7 M.J. 435 (C.M.A.1979).

■ Our review of the evidence adduced at trial reveals nothing more substantial than suspicions on the part of Corporal [M]. Recognizing that these Marines were observed at a location on Camp Pendleton popular among drug users, that fact alone does not support an inference of criminal conduct or probable cause to apprehend appellant and his companions. *Cf. United States v. Escobedo*, 11 M.J. 51 (C.M.A.1981). We can postulate several permissible activities which might prompt individuals to enjoy a recreational area during the noon hour. Moreover, we are reluctant to place great emphasis upon appellant's gesture in placing a corncob pipe in his pocket, even after Corporal [M]'s command. Absent other incriminating circumstances, possession of an ordinary pipe, even at that particular location, does not support a reasonable inference of criminal activity. *See United States v. Guzman*, 3 M.J. 740 (N.C.M.R. 1977).

The military police could briefly detain appellant based solely upon articulable suspicions, yet probable cause imposes a more stringent standard for further intrusions. Corporal [M]'s extensive law enforcement training and record of drug-related apprehensions on board Camp Pendleton were noted at trial. We find it significant that a military policeman with that background and experience would feel that an apprehension was justified *only* after property was seized and its contents examined. Under the circumstances of this particular case, we conclude that the facts known to the military police prior to the surrender of appellant's pipe fall below the requisite standard of probable cause to apprehend. Accordingly, the Government's reliance upon a search incident to apprehension is misplaced.

■ The Government's supplemental brief also alludes to the plain view doctrine as a justification for the seizure and search of the pipe. "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). Where the plain view doctrine has provided the rationale for a seizure, the incriminating nature of the property has been readily apparent. *See United States v. Sanchez*, 10 M.J. 273 (C.M.A.1981); *United States v. Burnside*, 15 U.S.C.M.A. 326, 35 C.M.R. 298 (1965); *United States v. Gladdis*, 11 M.J. 845 (A.C.M.R. 1981); *United States v. Whitehead*, 48 C.M.R. 344 (N.C.M.R.1973). Yet Corporal [M] ordered appellant to surrender his property based upon a momentary glimpse at what appeared to be an ordinary pipe with no attendant criminal activity or suspicious actions. We find nothing so inherently incriminating in the possession of a corncob pipe as to justify a plain view seizure under the facts before this Court. *Cf. Guzman, supra.*

In conclusion, we find that the compelled relinquishment of appellant's pipe was violative of the Fourth Amendment in the absence of probable cause to apprehend. We further find that the evidence seized from appellant's camper was equally inadmissible as the direct product of the initial Fourth Amendment violation. *Cf. United States v. Kesteloot*, 8 M.J. 209 (C.M.A.1980). Accordingly, the findings of guilty of the Charge and all specifications are set aside and the Charge is dismissed.