751 F.2d 997
 53 USLW 2369
 Jeffrey W. GARRETT, Plaintiff-Appellant,
v.
John LEHMAN, Secretary of Navy; Robert Barrow, Commandant,
U.S. Marine Corps; and W.H. Rice, Major General,
Commanding Officer, U.S. Marine Corps
Recruit Depot, San Diego, CA,
Defendants-Appellees.
 No. 84-5796.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 4, 1984.
Decided Jan. 8, 1985.
 
 Alice L. Cate, La Mesa, Cal., for plaintiff-appellant.
 Warren P. Reese, Asst. U.S. Atty., San Diego, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before FARRIS, ALARCON, and NORRIS, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Appellant, Jeffrey Garrett, a former Marine Corporal, was relieved of duty with an "other than honorable discharge" pursuant to the recommendation of the Military Administrative Discharge Board (hereinafter the Board). He appealed to the district court, which granted summary judgment in favor of appellees (hereinafter the Marines Corps). Garrett seeks reversal on several grounds. He also asks this court to extend the exclusionary rule to military administrative discharge proceedings. We decline to do so because the societal cost would be intolerable.
 
 I. PERTINENT FACTS AND PROCEDURE
 
 2
 The procedural background of this case provides the framework for consideration of Garrett's contentions on appeal. Accordingly, we first summarize the proceedings before the Special-Court Martial, the United States Navy-Marine Corps Court of Military Review, the Administrative Discharge Board, and the district court.[1]
 
 A. The Court-Martial Proceedings
 
 3
 On October 8, 1981, a Special Court-Martial found Garrett guilty of possession and the introduction of 386 grams of marijuana onto the Camp Pendleton Marine Corps Base in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. Sec. 892. Garrett was sentenced to pay reduction and separation with a bad conduct discharge.
 
 
 4
 The case against Garrett was based, in part, on evidence seized by a military police officer.[2] On July 16, 1981, a roving patrol observed four servicemen, including Garrett, engaged in discussion on the Camp Pendleton Base in an area known to be frequented by persons who use controlled substances. The officer became suspicious. He approached the group and ordered them to "freeze." Garrett was observed slipping what appeared to be a pipe into his pocket. He was commanded to remove and relinquish the item. At this time, the officer observed marijuana inside the pipe. The officer then requested and received Garrett's consent to search the interior of his camper. The search revealed sixteen plastic bags of marijuana.
 
 
 5
 The marijuana and the pipe were admitted into evidence at the Special Court-Martial.
 
 
 6
 Garrett was interviewed by Naval Investigation Service (hereinafter NIS) Agent Garcia following his arrest. He was fully advised of his rights prior to questioning. Garrett admitted ownership of the contraband, and stated that he obtained the marijuana in Arizona for the purpose of later sale and use. It is unclear whether this statement was introduced at the Special Court-Martial.[3] While the record of the court-martial was being reviewed, Garrett was on "appellate leave."
 
 B. Military Review Court Proceedings
 
 7
 Garrett raised three assignments of error on his appeal to the United States Navy-Marine Court of Military Review (hereinafter Review Court). Only one was addressed by the Review Court; i.e., the trial judge's alleged error in denying Garrett's motion to suppress evidence seized in violation of the fourth amendment. United States v. Garrett, 15 M.J. 601, 602 (NMCMR 1982).
 
 
 8
 The Review Court held that the military police officer lacked probable cause to seize Garrett's pipe. The Review Court concluded that the pipe was erroneously admitted at the court-martial and that the evidence obtained in Garrett's camper was equally inadmissible as the fruit of the initial fourth amendment violation. Id. at 604. The Review Court set aside the Special Court-Martial's finding of guilt, dismissed the charge, and set aside all specifications.
 
 
 9
 The Review Court limited its discussion to the reasonableness of the arrest and search. The Review Court stated: "Our resolution of that issue renders the remaining assignments of error moot." Id. at 602. The Review Court did not address the sufficiency of the evidence presented to show factual guilt nor the merits of the case.
 
 
 10
 C. Administrative Discharge Board Proceedings
 
 
 11
 On December 2, 1982, Garrett was ordered to return to active duty by his Commanding General. The purpose of this order was to give the Board jurisdiction to determine Garrett's fitness for future service in the Marine Corps. The Commanding General recommended that Garrett be discharged with a characterization of service as "other than honorable." On January 7, 1983, Garrett was notified of Board separation proceedings based on the charge of "misconduct; drug abuse" pursuant to Marine Corps Separation and Retirement Manual (hereinafter Manual ) Secs. 6210.1, 6210.5. The Board granted Garrett's request for a hearing.
 
 
 12
 At the hearing, the Marine's Recorder (Recorder) presented the Board a "basic package" of evidence. This package which Garrett's military and civilian counsel had received prior to the proceeding included: (1) lab reports authenticating the marijuana seized in the pipe and camper; (2) the Special Court-Martial order documenting the specifications tried; and (3) a signed NIS statement.
 
 
 13
 The Recorder also offered into evidence the full NIS report, and Agent Garcia's unsworn statement which summarized Garrett's admissions. Garrett's civilian counsel had not received this supplemental material prior to the Board proceedings. His military counsel, however, had reviewed the entire report in connection with the court-martial. Garrett made a timely objection to the admission of all evidence.
 
 
 14
 Garrett presented evidence of overall good conduct and job performance. He denied participation in the sale of contraband. During closing argument, the Recorder implied that Garrett had a record of misconduct as a juvenile. Garrett did not object to the statements made by the Recorder.[4]
 
 
 15
 Following the hearing on the charge against Garrett, the Board recommended separation under "other than honorable" conditions.[5] On February 16, 1983, the Commanding General effected this recommendation.
 
 D. District Court Proceedings
 
 16
 Garrett initially requested that the district court issue a temporary restraining order and a preliminary injunction staying his administrative discharge. This relief was denied.
 
 
 17
 On May 31, 1983, Garrett filed an amended complaint requesting that the court declare the discharge void, vacate the judgment, and return him to active duty status. Thereafter, cross-motions for summary judgment were filed. On January 30, 1984, the district court granted the Marine Corps' motion for a summary judgment. Garrett's motion for a summary judgment was denied.
 
 
 18
 The district court filed a memorandum decision in which it held, inter alia, that the exclusionary rule was inapplicable to the Board proceeding.
 
 ISSUES ON APPEAL
 
 19
 Garrett presents the following issues for our review:
 
 
 20
 1. Should the exclusionary rule be extended to military administrative discharge proceedings?
 
 
 21
 2. Did the Court of Military Review review the merits of the issues raised by Garrett concerning the judgment of conviction by the Special Court-Martial, thereby precluding any discharge proceedings concerning the same acts?
 
 
 22
 3. Was the act of recalling Garrett to active duty for the purpose of initiating discharge proceedings an abuse of discretion?
 
 
 23
 4. Were hearsay statements erroneously admitted by the Board?
 
 
 24
 5. Were the Marine Recorder's statements at the Board proceeding made outside the scope of his authority?6. Did the Board admit the NIS report in violation of applicable regulations?
 
 II. DISCUSSION
 
 25
 A. Extension of Exclusionary Rule to Discharge Proceedings
 
 
 26
 Garrett contends that his separation under "other than honorable" conditions was invalid because the Board relied on evidence seized in violation of the fourth amendment. His argument for extension of the exclusionary rule to administrative discharge proceedings rests on two grounds: (1) The exclusionary rule applies to criminal and quasi-criminal proceedings. Garrett asserts that the Board proceedings were criminal or quasi-criminal because he was given a less than honorable discharge as a punishment for his past behavior; (2) The benefit which may be derived from extending the exclusionary rule to administrative discharge proceedings is the deterrence of unlawful military police conduct. We are told that such benefit outweighs the cost to society of proscribing the military's use of otherwise competent evidence in administrative discharge proceedings.[6]
 
 1. Nature of Proceedings
 
 27
 The Supreme Court has not extended the rule excluding evidence seized in violation of the fourth amendment to proceedings which are civil in nature. "In the complex and turbulent history of the [exclusionary] rule, the Court has never applied it to exclude evidence from a civil proceeding, federal or state." United States v. Janis, 428 U.S. 433, 447, 96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046 reh'g denied, 429 U.S. 874, 97 S.Ct. 196, 50 L.Ed.2d 158 (1976) (emphasis added).
 
 
 28
 The exclusionary rule has been applied to federal criminal proceedings since 1914. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Garrett first contends that the administrative discharge proceedings were criminal in nature and therefore the Weeks rule is applicable to this matter.
 
 
 29
 In deciding whether the administrative discharge proceedings under review were criminal in nature, we are guided by the Supreme Court's decision in INS v. Lopez-Mendoza, --- U.S. ----, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). The threshhold inquiry in Lopez-Mendoza was whether a deportation hearing was criminal in nature. The Court concluded it was not. Id. 104 S.Ct. at 3484. Although unlawful entry into the United States is a crime, the Court concluded that a deportation hearing is not designed to punish for such entry. Rather, the hearing "looks prospectively to [the alien's] right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the [alien's] right to remain." Id. 104 S.Ct. at 3484.
 
 
 30
 Administrative discharge proceedings are equally prospective. The function of such proceedings is to determine eligibility for further military service; not to punish for past wrongs. This purpose is explicitly set forth in the governing Manual provision:
 
 
 31
 There is a sharp and distinct delineation between the administrative process which has as its purpose the administrative elimination of unsuitable, unfit, or unqualified Marines, and the judicial process, the purpose of which is to establish the guilt or innocence of a member accused of a crime and to administer punishment when appropriate. No evidence will be rejected from consideration solely on the grounds that it would be inadmissible in court-martial proceedings.
 
 
 32
 Manual Sec. 6316.1.
 
 
 33
 Garrett also argues that the administrative discharge proceedings are quasi-criminal in nature because his right to an honorable discharge was forfeited. He asserts that "the right to an honorable discharge is a property right--to take property away because of misconduct is a penalty."[7] Garrett's penalty argument is not supported by the law of this circuit. In Beller v. Middendorf, 632 F.2d 788 (9th Cir.1980), cert. denied, 454 U.S. 855, 102 S.Ct. 304, 70 L.Ed.2d 150 reh'g denied sub nom. Miller v. Weinberger, 454 U.S. 1069, 102 S.Ct. 621, 70 L.Ed.2d 605 (1981), we held that discharge proceedings against enlistees, and their ultimate separation for violating Navy regulations against homosexuality, did not involve a property interest. We reasoned that "[t]he Navy regulations and practices create no reasonable expectation of continued employment once a person is determined to fall within the categories described in the applicable regulation." Id. at 805; accord Watkins v. United States Army, 721 F.2d 687 (9th Cir.1983).
 
 
 34
 Garrett's attempt to characterize administrative discharge proceedings as being analogous to a forfeiture proceeding is equally unpersuasive.
 
 
 35
 The exclusionary rule has been applied to forfeiture proceedings because they have been deemed to be "quasi-criminal." Boyd v. United States, 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886). The Court continues to instruct us, however, that the reason forfeiture proceedings are so characterized is that "forfeiture is clearly a penalty for the criminal offense." Janis 428 U.S. at 447 n. 17, 96 S.Ct. at 3029 n. 17, quoting One 1958 Plymouth Sedan v. Comm. of Pennsylvania, 380 U.S. 693, 701, 85 S.Ct. 1246, 1251, 14 L.Ed.2d 170 (1965) (emphasis added).
 
 
 36
 The Board recommended that Garrett be separated from the service with an "other than honorable" discharge because of his unfitness for future duty as shown by his commission of a crime--not as a punishment for his past behavior.
 
 2. Balancing Test
 
 37
 The Supreme Court's decisions in Janis and Lopez-Mendoza did not foreclose extension of the exclusionary rule to civil proceedings. Instead, the Court instructed that the exclusionary rule may be extended where the benefits exceed the costs to society.
 
 
 38
 The balancing test we are required to employ, "imprecise as it may be," requires weighing "the likely social benefits of excluding unlawfully seized evidence against the likely costs." Where the costs exceed the benefits, the exclusionary rule may not be applied. Lopez-Mendoza 104 S.Ct. at 3486, citing Janis 428 U.S. at 446, 96 S.Ct. at 3028 (compare Adamson v. Commissioner of Internal Revenue, 745 F.2d 541 [9 Cir., 1984].
 
 
 39
 Garrett contends that the scales weigh in favor of extending the exclusionary rule to Board proceedings. We disagree.
 
 
 40
 a. Costs of Extension of Exclusionary Rule to Administrative Military Discharge Proceedings
 
 
 41
 The Supreme Court has consistently recognized the essential requirement of consistent military discipline. "[T]he primary business of armies and navies [is] to fight or be ready to fight wars should the occasion arise." Schlesinger v. Councilman, 420 U.S. 738, 757, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591 (1975), quoting United States ex rel. Toth v. Quarles, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). This readiness demands a "military discipline and obedience to orders [which] cannot be taught on the battlefield; the habit of immediate compliance with orders must be virtually reflex with no time for debate or reflection." Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983). See Parker v. Levy, 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439 (1974) (Court has long recognized that the military is by necessity, a specialized society); Schlesinger, 420 U.S. at 757, 95 S.Ct. at 1312 (the laws and traditions governing military discipline have a long history ... they are founded on unique military exigencies as powerful now as in the past).
 
 
 42
 The disruptive effect of extending the exclusionary rule to military administrative discharge proceedings is a price which our society cannot afford to pay.
 
 
 43
 This disruption is vividly illustrated by the facts of this case. Were we to disallow the use of unlawfully seized evidence in administrative discharge proceedings, the Marine Corps would be forced to permit a person who used and possessed marijuana for sale on a military base to return to active duty.
 
 
 44
 Our conclusion, that the costs of extending the exclusionary rule to military administrative discharge proceedings exceeds the benefits to society, is supported by the following comment of a unanimous Supreme Court in Chappell:
 
 
 45
 The special status of the military has required, the Constitution contemplated, Congress has created and this Court has long recognized two systems of justice to some extent parallel: one for civilians and one for military personnel (citation omitted). The special nature of military life, the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel ... "support[s] the military establishment's power to deal with its own personnel. The most obvious reason is that courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have."
 
 
 46
 Id. 103 S.Ct. at 2367-68, quoting E. Warren, 37 N.Y.U.L.Rev. at 187.[8]
 
 
 47
 b. Benefits
 
 
 48
 While various arguments have been advanced to justify the adoption of the exclusionary rule throughout its "turbulent history," the Supreme Court has most recently indicated that the prime purpose of the rule is "to deter future unlawful police conduct." Lopez-Mendoza 104 S.Ct. at 3486; Janis, 428 U.S. at 446, 96 S.Ct. at 3028, citing United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). The Court has noted that extension of the rule to civil proceedings would provide "marginal deterrence" Janis, 428 U.S. at 453, 96 S.Ct. at 3031 and has cautioned that even in the criminal context, the efficacy of the rule is dubious at best. United States v. Leon, --- U.S. ----, ---- n. 6, 104 S.Ct. 3405, 3413 n. 6, 82 L.Ed.2d 677 (1984).
 
 
 49
 Lopez-Mendoza informs us that "The exclusionary rule is likely to be most effective when applied to ... intrasovereign violations." Lopez-Mendoza, 104 S.Ct. at 3486.[9] The Court, nevertheless, concluded that the costs of extending the rule to civil deportation proceedings conducted by the Immigration and Naturalization Service (INS) where evidence was seized by INS agents in violation of the fourth amendment outweighed the possibility of any marginal deterrence. Id. 104 S.Ct. at 3486-91.[10]
 
 
 50
 We are mindful that in this matter the evidence introduced at the administrative discharge proceeding was gathered by military police who were also members of the Marine Corps. We have carefully weighed that factor against the costs to the Marine Corps of the exclusion of material evidence of the moral fitness of a person to serve in the military. We conclude that the fact that the evidence was seized by intrasovereign agents did not tip the scale in favor of extending the exclusionary rule.
 
 
 51
 We do not have the special training or knowledge to fathom the extent of the damage to military discipline which would result from imposition of the exclusionary rule in administrative discharge proceedings. We are certain, however, that the cost far exceeds the dubious "additional marginal deterrence" that might result from such an intrusion upon military authority and discipline.
 
 
 52
 B. Reversal of Court-Martial Proceedings Not on Merits No Bar Administrative Discharge
 
 
 53
 Relying on section 6106.1 of the Manual, Garrett contends that the order of the Review Court, dismissing the charge and setting aside all specifications against Garrett, constituted an acquittal and a judicial determination of the merits of his factual guilt of possession and the introduction of marijuana on a Marine Corps base. Alternatively, he asserts that under general res judicata principles, the decision of the Review Court to dismiss the charge against him barred an administrative discharge hearing. Under the doctrine of res judicata, "a final judgment on the merits precludes the parties from relitigating claims which were or could have been raised in that action." Amaro v. Continental Can Co., 724 F.2d 747, 749 (9th Cir.1984); Nevada v. United States, 463 U.S. 110, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 reh'g denied, --- U.S. ----, 104 S.Ct. 210, 78 L.Ed.2d 186 (1983); Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Both arguments must fail because the Review Court did not reach the merits of the charges against Garrett.
 
 
 54
 Section 6106.1 of the Manual provides that a person may not be separated from the Marine Corps for "[c]onduct that has been the subject of judicial proceedings resulting in an acquittal or action having the effect of an acquittal except ... (a) when such action is based upon a judicial determination not going to the merits of the issue of factual guilt of the respondent." (emphasis added).
 
 
 55
 As noted above, the Military Review Court did not reach the merits of the issue of Garrett's factual guilt. After satisfying itself that the evidence introduced by the government was illegally obtained, the court expressly declined to reach any other assignment of error. The Review Court did not discuss the sufficiency of the evidence offered to prove Garrett's guilt.
 
 
 56
 The legal basis for the Review Court's limited inquiry is quite clear, albeit unexplicated. Since the Supreme Court's decision in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), guilt is irrelevant where the government's evidence was obtained in violation of the fourth amendment. The guilty must go free where the blundering constable gathers his evidence illegally.
 
 
 57
 Because the Review Court did not determine the merits of Garrett's factual guilt prior to dismissing the charge against him, section 6106.1 and the doctrine of res judicata are inapplicable to the validity of the administrative decision of the Board.
 
 C. Return to Active Duty
 
 58
 Garrett contends that his fifth amendment right to due process was violated by his compelled return to active duty. He alleges that the Commanding General's sole purpose in taking this action was to give the Board jurisdiction to award an "other than honorable" discharge. According to Garrett, this "act was vindictive and, thus, constituted an arbitrary and capricious act and an abuse of the Commanding General's discretion." We disagree.
 
 
 59
 This court must uphold the decision of the Commanding General unless it is found to be "arbitrary, capricious and an abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. Sec. 706(2)(A). Under this standard of review, the actions of the Marine Corps are presumed to be valid. KCST-TV Inc. v. FCC, 699 F.2d 1185, 1191 (D.C.Cir.1983); Wilderness Public Rights Fund v. Kleppe, 608 F.2d 1250, 1254 (9th Cir.1979), cert. denied, 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980).
 
 
 60
 The Commanding General acted within the scope of his discretion in ordering Garrett returned to active duty. As stated in Pickell v. Reed, 326 F.Supp. 1086, 1089 (N.D.Cal.), aff'd, 446 F.2d 898 (9th Cir.), cert. denied, 404 U.S. 946, 92 S.Ct. 301, 30 L.Ed.2d 262 (1971): "A serviceman does not have a right per se to remain in the service until either court martialed or the expiration of his enlistment. McAulay v. United States, 305 F.2d 836, 158 Ct.Cl. 359 (1962) ... A serviceman's removal may be accomplished administratively. Rowe v. United States, 167 Ct.Cl. 468 (1964)."
 
 
 61
 Garrett has failed to point to any evidence in the record that demonstrates that the Commanding General acted vindictively or abused his discretion in returning Garrett to active duty from "appellate leave." Garrett does not argue that the Commanding General lacked the power to recall him to active duty. The fact that the Commanding General may have ordered him back to active duty to give the Board the power to consider other options than an honorable discharge does not prove vindictiveness or an abuse of discretion. Evidence of Garrett's possession of marijuana for sale amply supports the Commanding General's decision that the Board should consider awarding an other than honorable discharge.
 
 D. Hearsay
 
 62
 Garrett further objects to the admission of Agent Garcia's unsworn statement on the ground that it was hearsay. There is no foundation for this argument.
 
 
 63
 The strict rules of evidence governing the criminal court-martial proceeding, are not applicable to hearings before the Board. Manual Sec. 6306.1. Furthermore, Sec. 6317 of the Manual provides that testimonial evidence may be presented by unsworn witness statements or any other accurate or reliable means.[11]
 
 
 64
 Agent Garcia's statement was properly admitted into evidence at the Board proceeding.
 
 E. Recorder's Statements
 
 65
 In his closing argument before the Board, the Recorder referred to the district court's denial of Garrett's motion for a temporary restraining order. The Recorder also implied that Garrett had been engaged in "some type" of misconduct as a juvenile. Garrett contends that these statements were prejudicial and outside the scope of the Recorder's authority.
 
 
 66
 Section 6315.3 of the Manual sets forth the responsibility of the Recorder to the Board. The Recorder is under a duty to insure "that the Board is presented only such materials and documents which may properly be considered by it." Id. The section further provides that "[t]he Recorder's primary responsibility is to exploit all practical sources of information and to bring out all the facts in a manner in order to permit the Board to make fully informed findings and recommendations." Id.
 
 
 67
 The Recorder's comments were directed to an exploration of "all practical sources of information." We note that Garrett failed to object to these comments at the Board hearing. In any event, the challenged comments appear quite harmless in light of the overwhelming evidence of Garrett's involvement in serious misconduct meriting discharge from the Marine Corps.
 
 F. NIS Report
 
 68
 Garrett contends that he was denied the right to examine and obtain copies of evidence presented to the Board in violation of section 6304 of the Manual.[12] Garrett points to the fact that his civilian counsel was only provided the "basic package" of evidence prior to the Board hearing.
 
 
 69
 Garrett asserts that he was not afforded the opportunity to view or obtain the entire NIS investigation materials which were presented to the Board. This additional "package" contained duplicate copies of the lab report, chain of custody documents and Agent Garcia's unsworn statement.
 
 
 70
 We agree that section 6304 of the Manual mandated that Garrett be afforded the opportunity to examine this additional evidence. The facts show, however, that Garrett's civilian counsel had a full and fair opportunity to examine the entire NIS report at the time it was proferred by the Recorder.
 
 
 71
 The Marines concede that it is customary to provide advance copies of evidence to counsel. Contrary to Garrett's contentions, however, the relevant Manual provision does not require prior notice. Manual Sec. 6304. Additionally, Garrett's military counsel reviewed the NIS report long before the Board was convened. Garrett was neither surprised by nor unfamiliar with the evidence presented before the Board. Thus, no prejudice occurred because his civilian counsel did not receive the report prior to the hearing. Accordingly, the introduction of the full NIS report did not violate Garrett's right to due process of law.
 
 
 72
 The judgment of the district court is AFFIRMED.
 
 NORRIS, Circuit Judge, concurring separately:
 
 73
 I concur in Judge Alarcon's opinion except for Part IIA. My concurrence with Part IIA is limited to its conclusion that the issue of applicability of the exclusionary rule to military discharge proceedings is controlled by INS v. Lopez-Mendoza, --- U.S. ----, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984).
 
 
 
 [1]
 On appeal from a grant of summary judgment, the standard of review on questions of law is de novo. Chelson v. Oregonian Publishing Co., 715 F.2d 1368, 1370 (9th Cir.1983). In reviewing an administrative action, we apply the standard set forth in 5 U.S.C. Sec. 706(2)(A): whether the administrative actions were "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." Walker v. Navajo Hopi Indian Relocation Commission, 728 F.2d 1276, 1278 (9th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984)
 
 
 [2]
 The record of the Special Court-Martial was not presented to the district court and is therefore not before us. The Review Court opinion summarizes the evidence introduced at trial
 
 
 [3]
 The Review Court did not discuss this evidence. The relevant paragraph, from Agent Garcia's summary of Garrett's statement, is set out below:
 At 14:30, 16 July 1981, GARRETT admitted ownership of the seized marijuana and smoking pipe with marijuana. GARRETT stated that he brought the marijuana from Arizona when he was there on leave. GARRETT related that he found the marijuana field and cut the marijuana and bagged it himself. GARRETT further admitted that he had been trying to sell the marijuana he brought from Arizona, but had not been very effective as it is homegrown and not of the best quality. GARRETT further stated that when he was apprehended by the Military Police at Lake O'Neil he was in the process of getting ready to smoke the marijuana, but had not yet had a chance to do so. GARRETT refused to submit a written statement regarding the above information.
 
 
 [4]
 The Recorder argued as follows:
 As I said earlier, we're here to determine whether he should be retained or discharged from the Marine Corps, nothing more. In doing so, I would look at some facts; number one, he was an NCO, a position given to individuals for special trust and confidence. This incident here is not the only one. He has one other one, like I said the NJP. It was done aboard a Naval reservation. This man has had some type of police background although it might be as a juvenile, but you learn right from wrong. He knew what was right from wrong and still proceeded to do that.
 
 
 [5]
 The Board has the power to recommend separation. It does not have the authority to order discharge. If separation is recommended, the Board shall characterize the separation as "honorable," "other than honorable," etc. Manual Sec. 6107
 The jurisdiction of the Board is restricted. A recommendation may not be based on conduct that has been the subject of judicial proceedings resulting in acquittal except when the prior judicial determination has not reached the merits of the issue of factual guilt or innocence. Manual Sec. 6106.
 
 
 [6]
 In his opening brief, Garrett's argument relied on our decision in Lopez-Mendoza v. INS, 705 F.2d 1059 (9th Cir.1983) where we permitted expansion of the exclusionary rule to INS deportation proceedings. The Supreme Court reversed this court's decision one week after Garrett's brief was filed. INS v. Lopez-Mendoza, --- U.S. ---, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). The Marine Corps' brief relied on the Supreme Court's decision. Counsel for Garrett failed to file a reply brief commenting on the Court's decision reversing Garrett's primary authority
 
 
 [7]
 Garrett relies on United States ex rel Roberson v. Keating, 121 F.Supp. 477 (N.D.Ill.1949) in support of his assertion that the exclusionary rule should be applied to military discharge proceedings because a property right is at stake. This reliance is puzzling in view of the fact that the district court in Keating commented that:
 The Fourth Amendment grants a civilian the right to be secure in his person, house, papers, and effects which are [sic] denied members of the armed forces.
 Id. at 478.
 Thus, the district court in Keating would undoubtedly have denied any request to extend the exclusionary rule to Garrett, because he was still a member of the armed services at the time of the Board proceedings. The issue before the court in Keating was whether the plaintiff was a member of the armed services at the time of his court-martial. He had earlier been given an honorable discharge. In holding that the Navy had no jurisdiction to conduct the court-martial proceedings under the facts before him, the court noted that "an honorable discharge is an extremely valuable property right." Id. at 479. In the matter before us, there is no dispute that Garrett was a member of the Marine Corps at the time of the administrative discharge proceedings.
 
 
 [8]
 A long line of authority supports the reasoning of Chappell: Rostker v. Goldburg, 453 U.S. 57, 66, 101 S.Ct. 2646, 2652, 69 L.Ed.2d 478 (1981) (recognizing strong need for "a healthy deference to legislative and executive judgments in the area of military affairs); Brown v. Glines, 444 U.S. 348, 360, 100 S.Ct. 594, 602, 62 L.Ed.2d 540 (1980) (the "special character of the military requires civilian authorities to accord military commanders some flexibility in dealing with matters that affect internal discipline and morale"); Orloff v. Willoughby, 345 U.S. 83, 92, 73 S.Ct. 534, 539, 97 L.Ed. 842 (1953) ("large area of discretion as to particular duties must be left to commanding officers")
 
 
 [9]
 Lopez-Mendoza thus answered the question left open in Janis "whether the exclusionary rule is to be applied in a civil proceeding involving an intrasovereign violation." Janis, 428 at 456 n. 31, 96 S.Ct. at 3033 n. 31. See Tirado v. CIR, 689 F.2d 307 (2d Cir.1982), cert. denied, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983) (court declined to extend exclusionary rule to civil proceedings)
 
 
 [10]
 The Court reasoned that the likelihood of benefit was lessened by the presence of several factors including available "alternative remedies" in federal court, id. 104 S.Ct. at 3488. The possibility of declaratory relief against INS officers engaged in Constitutional violations mitigated any value derived from exclusion of otherwise reliable evidence. Id
 A Marine alleging fourth amendment violations may seek injunctive relief in federal court. This remedial avenue is open to aggrieved military personnel despite failure to exhaust post-discharge administrative remedies. Beller at 801. Any benefit which might be realized from an application of the exclusionary rule to Board proceedings is minimized by the existence of this readily "available alternative." Id. Lopez-Mendoza, 104 S.Ct. at 3488.
 
 
 [11]
 Witnesses. Testimonial evidence may be presented to the administrative board through the personal appearance of the witness, through the use of oral or written depositions, unsworn written statements, affidavits, testimonial stipulations, or any other accurate and reliable means for presenting testimonial evidence .... Manual Sec. 6317
 
 
 [12]
 Section 6304 of the Manual lists the rights of an accused before the Board. Garrett specifically points to subparagraph (m) which gives "the right to examine evidence presented by the Board"; subparagraph (e) which affords "the right to obtain copies of documents that will be forwarded to the separation authority supporting the basis of the proposed separation"; and subparagraph (h) which accords "the right to representation at the Administrative Board."