990 F.Supp. 892 (1998)
UNITED STATES of America, Plaintiff,
v.
AKZO NOBEL COATINGS, INC., The Dow Chemical Company, Gage Products Company, Defendants.
No. 95-71470.
United States District Court, E.D. Michigan, Southern Division.
January 7, 1998.
Leslie B. Bellas, Frank Bentkover, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, DC, David G. Hetzel, Ronald W. Zdrojeski, LeBouf, Lamb, Greene & MacRae, LLP, Paul S. Lewandowski, Butzel Long, Detroit, MI, Thomas M. Woods, Freeman, McKenrie, Mt. Clemens, MI, for Plaintiff.
L. Nicholas Treinen, Lake Orion, MI, for Mantex Corporation.
Fred R. Wagner, Beveridge & Diamond, PC, Washington, DC, for Dow Chemical.
Thomas M. Woods, Freeman McKenzie, Mt. Clemens, MI, Robert Young, King, Young & Billmeyer, Allen Park, MI, Sherwin *893 E. Zamler, Susan Sadler, Dawanda, Mann, Mulcahy & Sadler, PLC, Bloomfield Hills, MI, for Seaman Industries & Cook Paint & Varnish.
Eugene E. Smany, Valerie P. Simmons, John D. Tully, Warmer, Norcross & Judd, Grand Rapids, MI, Donald E. Conley, McDonnell, Conley & Neveu, Bloomfield Hills, MI, James R. Temple, Farmington Hills, MI, for Kay Screen Printing.
James R. Temple, Farmington Hills, MI, for Three R Indus., Inc.
Hugh Thomas, Francis J. Newton, Jr., Berry, Moorman, King & Hudson, Detroit, MI, for Acme Precision Products.
Scott R. Powell, Jonathan P. Gerisch, Powell & Gerisch, Ann Arbor, MI, Mary S. Rigdon, U.S. Attorney's Office, Detroit, MI, for Red Spot Paint.
Jamie Schiff, Textron, Inc., Providence, RI, for Textron, Inc./Ex-Cell-O.
Devin S. Schindler, Warner, Norcross & Judd LLP, Grand Rapids, MI, for Standard Detroit Paint.
Dustin P. Ordway, Dickinson, Wright, Moon, Van Dusen & Freeman, Grand Rapids, MI, for Arkwright, Inc.
Bernard P. Paige, Patrick J. Ennis, Colombo & Colombo, Bloomfield Hills, MI, for Dow Chemical.
Neil T. Peters, Kohl, Harris & Peters, PC, Metamora, MI, for Metamora Township.
Donald H. Poniatwoski, Nowak, Poniatowski & Morgan, PC, Lapeer, MI, for Lapeer County Press.
Gary R. Letcher, Arthur A. Schulcz, Sr., The Harker Firm, Washington, DC, for Akzo Nobel Coatings.
Jeffrey J. Mayer, Raymond & Prokop, PC, Southfield, MI, for BF Goodrich.
Susan E. Morrison, VanderKloot, Rentrop, Martin, Haynes & Morrison, PC, Bloomfield Hills, MI, for Oxford Township.
Michael J. Nolan, Kohl, Harris & Peters, PC, Metamora, MI, for Bradford Tool & Die and Bushman Disposal.
Michael Kay, Dow Chemical Company, Legal Department, Midland, MI, for Dow Chemical.
Daniel P. King, Pedersen, Keenan, King, Wachseberg & Andrzejak, PC, Farmington Hills, MI, for DeSoto, Argo Paint & Chemical, & Argus Paint Co.
John R. LaParl, Jr., Smith, LaParl & Mequio, PC, Portage, MI, for Township of Metamora.
Brian Herschfus, Wood, Kull, Herschfus, Lay & Kull, Farmington Hills, MI, for American Jetway.
Leslie Hulse, General Electric, Corporate Environmental Programs, Albany, NY, for General Electric.
Howard E. Jarvis, Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, for Firestone Tire.
Nancy L. Kahn, Foster, Swift, Collins & Smith, PC, Farmington Hills, MI, for Frankel Metal.
William D. Gilbride, Jr., Abbott, Nicholson Quilter, Essahki & Youngblood, Detroit, MI, Carol W. Grombala, Kohl Secrest Wardle Lynch Clark & Hampton, Farmington Hills, MI, for Precision Coatings.
Michael J. Hainer, Mark S. Demorest, Hainer & Demorest, Troy, MI, Christopher A. Hajek, Gault Davidson, Flint, MI, for Van Etten Disposal.
Christopher J. Dunsky, HonigmanMiller Schwartz & Cohn, Detroit, MI, for Trayco, Inc., Textron, Inc.
Michael S. Elder, Goodwin, Procter & Hoar, Albany, NY, Gary S. Eller, Boothman Hebert & Eller, Detroit, MI, Thomas J. Fayfer, Paul F. Bohn, Jeffrey S. Jones, Fausone, Taylor & Bohn LLP, Northville, MI, for Stricker Paint.
Brian D. Devlin, Asst. Attorney General, MI Dept of Attorney General, Environmental Protection Div., Lansing, MI, Frederick J. Dindoffer, Bodman Longley & Dahling, LLP, Detroit, MI, for Metamora Industries, Inc., Abitbi-Price Corp.
Donald R. Dixon, Ferndale, MI, Doug A. Donnell, Mika, Myers, Beckett & Jones, Grand Rapids, MI, for Gage Products.
Charles M. Denton, Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, MI, for Village of Metamora, Addison Township, *894 Imlay City, Lapeer County Rd Commission, Lapeer Vocational Technical School, Oxford Township, Village of Dryden & Village of Oxford.
David J. Carney, William E. Coughlin, Kevin P. Hallquist, Calfee, Halter & Griswold, Cleveland, OH, for Dunbarton Corp.
David J. Carney, William E. Coughlin, Kevin P. Hallquist, Calfee, Halter & Griswold, Cleveland, OH, for Dunbarton Corp.
Ruben Acosta, David H. Fink, Fink Zausmer, P.C., Farmington Hills, MI, for Waste Management Inc. & Chemical Waste Mgmt.
Phil Adkinson, Adkinson & Need, Bloomfield, MI, for Village of Leonard.
Richard J. Bahls, Bahls & Shamblin, Lapeer, MI, for Village of Metamora.
Leonard K. Berman, Hainer, Demorest & Berman, PC, Troy, MI, for Bridgestone/Firestone.
Karl S. Bourdeau, Robert Brager, Susan H. Ephron, Bevendge & Diamond, Washington, DC, Ulysses S. Boykin, Matthew R. Halpin, Lewis, Clay & Munday, Detroit, MI, for General Electric.
Kathryn A. Buckner, Seyburn, Kahn, Ginn, Bess, Deitch & Serlin PC, Southfield, MI, for Metal Cote Chemical, Michlin Chemical, Paint Work, Inc. & Dunlop Collision.
Frances M. Zizila, Gregory L. Sukys, Environmental Enforcement Section, U.S. Department of Justice, Washington, DC.

OPINION and ORDER
FEIKENS, District Judge.
Defendants Akzo Nobel Coatings, Inc. ("Akzo"), Dow Chemical Company ("Dow") and Gage Products Company ("Gage") (collectively referred to as "defendants") have moved pursuant to Fed.R.Civ.P. 56 for summary judgment on the issue of remedy selection. Plaintiff United States of America ("plaintiff") has filed a cross motion for summary judgment on the same issue.
Thus, the precise issue before me is this: was the Environmental Protection Agency's ("EPA") selection of a "total incineration" remedy instead of a "combination" remedy (i.e., incinerate liquids and landfill solids) arbitrary, capricious and inconsistent with the National Contingency Plan ("NCP")?[1] I hold that it is not. For the following reasons defendants' motion for summary judgment is denied and plaintiff's cross motion for summary judgment is granted.

I. BACKGROUND

In an opinion and order on a statute of limitations issue which is being released simultaneously with this present opinion the background of the case is set forth. I only add that this case involves an 80-acre landfill located near the Village of Metamora in Lapeer County, Michigan. The site became contaminated with hazardous wastes during its 25-year operation from 1955-1980. State and federal environmental authorities investigated it in the late 1970's and 1980's and remedial investigation and design continues at the site today. In 1982 Michigan Department of Natural Resources ("MDNR") confirmed the presence of hazardous wastes in two areas of the landfill. The EPA and MDNR entered into an agreement in which MDNR assumed responsibility of conducting a Remedial Investigation (RI) and Feasibility Study (FS).
After extensive study and the publication of a Phased Feasibility Study (PFS) which lasted from October 1985 to May 1986, EPA published a Record of Decision (ROD I) in September 1986 for the first phase or "operable unit" of the site remediation (OU-1). ROD I stated the remedy recommended in the PFS which consisted of excavating buried drums located in Areas 1 and 4 of the site and sending them and the contaminated soil around them offsite for incineration.[2] Prior to this selection, EPA and MDNR evaluated a number of possible alternative remedies, including a "no action" alternative. The PFS *895 identified and evaluated eleven remedial alternatives according to criteria set forth in the NCP.[3] Five of these alternatives received extensive scrutiny. Specifically, EPA evaluated each of these five alternative's (i) technical feasibility, (ii) cost-effectiveness, (iii) implementability, (iv) protection of human health and the environment, (v) reduction of toxicity, volume and mobility of hazardous substances; and (vi) adverse environmental impacts of competing remedies.[4] EPA then submitted its findings, as required by the NCP for public review and comment. EPA produced a "responsiveness summary" of the material it received during this public review and comment stage.
EPA concluded, based on the record as it existed at the time it selected the OU-1 remedy, that it was cost-effective because it had minimal long-term operation and maintenance costs, it was more protective of human health and the environment than the other alternatives, and it provided a permanent solution to the problem due to the destruction of the hazardous substances that posed risks to public health and welfare. MDNR's director Gordon Guyer summarized the rationale behind the excavation and disposal remedy, stating that it "reduce[d] the pressure on limited landfill capacity" and "reflect[ed] the need to seek permanent waste destruction remedies rather than transporting contamination problems from one location to another."[5]

II. STANDARD OF REVIEW

The standard of review on a motion such as this brought pursuant to Fed.R.Civ.P. 56 is a familiar one: summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Because defendants have failed to point to a genuine issue of material fact regarding whether the costs for OU-1 that plaintiff incurred were inconsistent with the NCP, summary judgment in favor of plaintiff is appropriate. See, United States v. R.W. Meyer, Inc., 889 F.2d 1497 (C.A.6 1989) cert. den., 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990).

III. ANALYSIS

The parties agree that Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. 9607,[6] allows the United States to recover "all costs ... not inconsistent with the National Contingency Plan." As a threshold matter, I stress that the NCP does not require response cost items to be "reasonable," "proper" or "cost-effective" in order for the United States to recover its response costs. My inquiry is limited to a determination that the costs arose out of actions that comported with the NCP. See, United States v. Kramer, 913 F.Supp. 848, 863 (D.N.J.1995). As stated in United States v. American Cyanamid Co., 786 F.Supp. 152, 161 (D.R.I.1992), "CERCLA imposes no obligation on the United States to minimize its response costs for the benefit of responsible parties who are liable for costs."
These rules are firmly grounded in public policy. They recognize that CERCLA was enacted to provide EPA and, therefore taxpayers with a prompt and efficient method by which they can be reimbursed for costs spent to remediate environmental damage. While courts must be careful not to "rubber stamp" administrative action, they cannot entirely reopen administrative determinations that, in cases like this, took years of carefully balanced study to reach. Deferential review also recognizes that EPA, as the administrative agency designated by Congress to administer CERCLA, is better equipped to decide how best to remediate a contaminated site than are courts with limited resources. *896 As stated by the United States Court of Appeals for the District of Columbia:
[A district court] must look at the [agency's] decision not as the chemist, biologist, or statistician that [the court is] qualified neither by training nor experience to be, but as a reviewing court exercising [its] narrowly defined duty of holding agencies to certain minimal standards of rationality.
Ethyl Corp. v. EPA, 541 F.2d 1, 36 (C.A.D.C. 1976), cert. den., 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976).
For this reason, review of agency action by a district court is similar to review conducted by appellate courts of district court decisions. This is the approach adopted by the United States Supreme Court in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971):
[A district court] must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency.
Id. at 416, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136.
The United States Court of Appeals for the Sixth Circuit restated this standard in United States v. Akzo Coatings of America, Inc., 949 F.2d 1409 (C.A.6 1991):
Ours should not be the task of engaging in a de novo review of the scientific evidence pro and con on each proposed remedy in the hazardous substance arena. The federal courts have neither the time nor the expertise to do so, and CERCLA has properly left the scientific decisions regarding toxic substance cleanup to the President's delegatee, the EPA administrator and his staff.
* * * * * *
A reviewing court should not attempt to substitute its judgment for the expertise of EPA officials. Ours is the task of searching for errors of procedure and serious omissions of substantive evidence, not the job of reformulating a scientific clean-up program developed over the course of months or years.
Id. at 1424-1425.
This oft-repeated deferential standard, while limited by the Administrative Procedures Act, 5 U.S.C. 706(2)(A), confines judicial review of administrative decisions to a determination whether they were "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." Garrett v. Lehman, 751 F.2d 997, 999 n. 1 (C.A.9 1985). See also, Chevron, U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Defendants base their claim that EPA's conduct was arbitrary, capricious and inconsistent with the NCP on the following five grounds:
(i) the total incineration remedy was $30,000,000 more expensive (almost four times the cost) than the combination remedy;
(ii) incineration was not commonly used for solid wastes;
(iii) some of the wastes were not acceptable for incineration (due to the physical and chemical characteristics of the waste);
(iv) the feasibility of incinerating the wastes was uncertain;
(v) there was a shortage of incinerator capacity that could or would accept wastes.
I disagree with defendants' characterization. The record amply demonstrates that EPA did as the NCP required: it evaluated pursuant to 40 C.F.R. 300.68(h)(2)(i)(vi), (i) technical feasibility, (ii) cost-effectiveness, (iii) implementability, (iv) protection of human health and the environment, (v) reduction of toxicity, volume and mobility of hazardous waste, and (vi) the adverse environmental impacts of competing remedies. See, PFS at 49-62. EPA rationally concluded that these factors cumulatively weighed in favor of a total incineration remedy. I find no clear error of judgment in this conclusion. The record clearly shows that the areas where OU-1 was to be implemented were thoroughly investigated, a phased feasibility study was conducted that screened and evaluated remedial alternatives, the remedy selected was carefully weighed against other alternatives according to criteria set forth in *897 the NCP at 40 CFR 300.68(h)(2)(i)-(vi), and was in all other respects consistent with the guidelines established by EPA for the selection of remedies. In short, while perhaps EPA did not select the "best" remedy available to it, my review of EPA's decision should not be a judicial "second guess," but rather I must confine it to a determination whether the remedy was rationally chosen based upon the information available at the time the remedy was selected. I conclude that it is.

IV. CONCLUSION

For these reasons, plaintiff's remedy selection withstands judicial scrutiny. Defendants' motion for summary judgment is denied. Plaintiff's cross motion for summary judgment is granted.
IT IS SO ORDERED.
NOTES
[1] See, 50 Fed.Reg. 47.912 (Nov. 20, 1985).
[2] There is some confusion arising out of the fact that the contractor that helped produce the PFS released an earlier version of the report that apparently did not choose the total incineration remedy. It appears, however, that neither the decisionmakers at MDNR nor those at EPA favored the remedy originally recommended. A "revised" PFS was then issued recommending total incineration. The PFS referred to in the text above is this second PFS.
[3] See, 50 Fed.Reg. 47.912 (Nov. 20, 1985).
[4] See, 40 CFR 300.68(h)(2)(I)-(vi).
[5] Plaintiffs exhibit A, tab 2 (September 24, 1986 letter from Gordon Guyer, MDNR, to Valdus Adamkus, EPA).
[6] As amended by the Superfund Amendments and Reauthorization Acts of 1986 ("SARA"), 100 Stat. 1613 (1986).