Earnest MILLER *v.* CITY OF LITTLE ROCK

CA 87-110                                                        743 S.W.2d 9

Court of Appeals of Arkansas
Division II
Opinion delivered January 20, 1988

*Herby Branscum, Jr.,* for appellant.

*Mark Stodola*, City Att'y, by: *Edward G. Adcock*, Asst. City Att'y, for appellee.

JOHN E. JENNINGS, Judge. Earnest Miller was a fireman for the City of Little Rock. In June of 1985, the Arkansas State Police obtained a warrant to search Miller's house in Perry County and found marijuana. Miller was arrested and charged with the manufacture and possession of a controlled substance with intent to deliver.

Shortly after Miller's arrest, the fire chief notified him in writing that a pretermination hearing would be held in four days. During the course of that hearing, Miller asked for a continuance on the ground that his attorney was unable to be present. This request was denied, and the fire chief terminated Miller's employment with the fire department. He appealed to the Little Rock Civil Service Commission. After a full evidentiary hearing in which Miller was represented by counsel, the Commission voted to uphold his dismissal. Miller appealed the Commission's decision to the Pulaski County Circuit Court. Before that appeal was heard, a pre-trial hearing was held on the criminal charges in the Perry County Circuit Court. That court found the search warrant invalid and suppressed all evidence obtained as a result of the search. The criminal charges against Miller were subsequently dismissed.

In December of 1986, the Pulaski County Circuit Court affirmed the decision of the Little Rock Civil Service Commission. In doing so, the court specifically considered evidence of Miller's possession of marijuana, despite the fact that this evidence had been suppressed in the Perry County criminal proceedings. Miller now appeals the decision of the Pulaski County Circuit Court upholding his termination. We affirm.

■■ Appellant's first argument is that the circuit court erred in not holding that he was denied due process of law by the refusal to grant him a continuance at the pretermination hearing. It is true that an employee who has a constitutionally protected property interest in his employment has certain due process rights in connection with discharge proceedings. *Cleveland Board of Education* v. *Loudermill*, 470 U.S. 532 (1985). These rights are not nearly so extensive as those afforded to defendants in criminal cases. Generally, "some kind of a hearing" is required prior to

discharge. *Loudermill*, 470 U.S. at 542. The court in *Loudermill* held that a full evidentiary hearing was not required prior to termination of employment and that the essential requirements are notice of the charges and an opportunity to respond. These essential requirements were met in this case. Appellant had no constitutional right to a continuance in the middle of the pretermination hearing. Even in a criminal proceeding, where much more due process is due, the granting or denial of a continuance is a matter entrusted to the discretion of the trial judge. *Hunter* v. *State*, 8 Ark. App. 283, 653 S.W.2d 159 (1983). Finally, we note that a second pretermination hearing was offered to Miller, in order to permit him to have his attorney present.

Appellant's second argument is that the circuit court erred in considering evidence of Miller's possession of marijuana when that evidence had been excluded in the Perry County criminal case against him. The history of the exclusionary rule is not obscure. In *Weeks* v. *United States*, 232 U.S. 383 (1914), the Supreme Court held that illegally obtained evidence is inadmissible in criminal proceedings brought in federal courts. In *Wolf* v. *Colorado*, 338 U.S. 25 (1949), the Court held that the Fourth Amendment right to freedom from unlawful searches was made applicable to the states through the due process clause of the Fourteenth Amendment, but the Court expressly declined to hold that due process required state courts to exclude evidence obtained by an unlawful search. In *Mapp* v. *Ohio*, 367 U.S. 643 (1961), the Court held that due process required state courts to exclude such evidence in a criminal case.

Before *Weeks*, the exclusionary rule was not the law in this state. *Starchman* v. *State*, 62 Ark. 538, 36 S.W. 940 (1896). The Arkansas Supreme Court continued to follow its earlier precedents after the *Weeks* decision. *See e.g. Benson* v. *State*, 149 Ark. 633, 233 S.W. 758 (1921). In *Clubb* v. *State*, 230 Ark. 688, 326 S.W.2d 816 (1959), the supreme court announced its intention to re-examine its earlier holdings. In *Gerard* v. *State*, 237 Ark. 287, 372 S.W.2d 635 (1963), the court, while recognizing the decision in *Mapp*, continued to decline to overrule the earlier cases. By the time of the decision in *Perez* v. *State*, 249 Ark. 1111, 463 S.W.2d 394 (1971), it was clear that the Arkansas Supreme Court would not return to the theory that illegally seized evidence is admissible in criminal proceedings.

The idea that the exclusionary rule might be applicable in proceedings other than a direct criminal prosecution is comparatively recent. In *One 1958 Plymouth Sedan* v. *Pennsylvania*, 380 U.S. 693 (1965), the Supreme Court held that the exclusionary rule was applicable in forfeiture proceedings. The reason for the holding was that suits for forfeitures incurred by the commission of a criminal offense, while technically civil proceedings, are brought by the prosecuting attorney and are criminal proceedings in substance and effect. In *United States* v. *Calandra*, 414 U.S. 338 (1974), the Court held that the exclusionary rule is not applicable in grand jury proceedings. In *United States* v. *Janis*, 428 U.S. 433 (1976), the Court held that evidence unlawfully seized by state law enforcement officers was admissible in a federal tax assessment proceeding. And in *INS* v. *Lopez-Mendoza*, 468 U.S. 1032 (1984), the Court held that the exclusionary rule does not apply in civil deportation proceedings. In that case the Court said:

> In *United States* v. *Janis*, this Court set forth a framework for deciding in what types of proceeding application of the exclusionary rule is appropriate. Imprecise as the exercise may be, the court recognized in *Janis* that there is no choice but to weigh the likely social benefits of excluding unlawfully seized evidence against the likely costs. On the benefit side of the balance the prime purpose of the exclusionary rule, if not the sole one, is to deter future unlawful police conduct. On the cost side there is the loss of often probative evidence and all of the secondary costs that flow from the less accurate or more cumbersome adjudication that therefore occurs. [Citations, brackets, and quotation marks omitted.]

468 U.S. at 1041.

In *Schneider* v. *State*, 269 Ark. 245, 599 S.W.2d 730 (1980), our supreme court noted the disinclination on the part of the United States Supreme Court to extend the impact of the exclusionary rule, citing *Janis* and *Calandra*.

In *Tirado* v. *C.I.R.*, 689 F.2d 307 (2d Cir. 1982), the court followed *Janis* and held that the exclusionary rule is not applicable in a civil federal tax proceeding. The court in *Garrett* v. *Lehman*, 751 F.2d 997 (9th Cir. 1985), also applied the *Janis*

analysis and held that the exclusionary rule was not applicable to military administrative discharge proceedings. The rule in *Janis* was summarized by the court in *United States* v. *Fitzgerald,* 724 F.2d 633, 636 (8th Cir. 1983):

> In deciding whether particular evidence should be suppressed in any given case, then, courts properly weigh the deterrent effect of the suppression against its societal cost. Where little or no deterrence will result from suppression, suppression is inappropriate, for where the reason for the rule ceases, its application also must cease.

We believe that this is an appropriate approach to follow. In the case at bar we think it unlikely that the state police officers would have had a significant interest in these administrative discharge proceedings. We do not think that to apply the exclusionary rule in these proceedings would be likely to have a significant additional deterrent effect. *See Tirado, supra.*

The appellant relies primarily on *Rinderknecht* v. *Maricopa County Employees Merit System,* 21 Ariz. App. 419, 520 P.2d 332 (1974), *Powell* v. *Zuckert,* 366 F.2d 634 (1966), and *Turner* v. *City of Lawton,* 733 P.2d 375 (Okla. 1986). The decision of the Arizona Court of Appeals in *Rinderknecht* is not precedent; it was vacated on petition for review to the Arizona Supreme Court. *See Rinderknecht* v. *Maricopa County Employees Merit System,* 111 Ariz. 174, 526 P.2d 713 (1974). The court in *Powell* held that the exclusionary rule did apply in military discharge proceedings, but that case was decided ten years before the Supreme Court's decision in *Janis.*

In *Turner,* the Oklahoma Supreme Court held that the exclusionary rule was applicable to a state administrative discharge proceeding involving a fireman. The facts in *Turner* are virtually identical to those in the case at bar, but the court's decision was expressly based upon the constitution of the State of Oklahoma. The court in *Turner* also noted that the exclusionary rule for criminal proceedings had been adopted by the Oklahoma Supreme Court in 1921, forty years before *Mapp* v. *Ohio.* Therefore, despite its factual similarities, *Turner* is not persuasive precedent for us.

The exclusionary rule provides no remedy for completed

wrongs. *INS Lopez-Mendoza*, 468 U.S. at 1046. The purpose of the rule is not to redress the injury to the privacy of the search victim. *United States* v. *Calandra*, 414 U.S. at 347. The ruptured privacy of the victim's home and effects cannot be restored. *Linkletter* v. *Walker*, 381 U.S. 618 (1965). The rule is calculated to prevent, not to repair. *Elkins* v. *United States*, 364 U.S. 206 (1960). Federal statute law provides a compensatory remedy. 42 U.S.C.A. § 1983 (West 1981).

■ We hold that the trial court did not err in declining to apply the exclusionary rule in the case at bar.

Affirmed.

Corbin, C.J., and Mayfield, J., agree.