CITY OF OMAHA, APPELLANT, V. SUSAN SAVARD-HENSON
AND CITY OF OMAHA PERSONNEL BOARD, APPELLEES.

615 N.W.2d 497

Filed August 8, 2000.    No. A-99-645.

Paul D. Kratz, Omaha City Attorney, and Bernard J. in den Bosch for appellant.

Steven J. Lefler, of Lefler & Mullen Law Firm, for appellees.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

Susan Savard-Henson's employment with the City of Omaha (City) was terminated because of alleged drug use at work, felony drug charges against her, and her possession of stolen City property. She appealed the termination to the City of Omaha Personnel Board (Board). The Board, after excluding certain evidence under the Fourth Amendment exclusionary rule, reinstated her with a 30-day suspension without pay. The

City filed a petition in error in the district court for Douglas County, which ultimately affirmed the Board's decision. This appeal involves the first impression issue of whether the exclusionary rule, used to suppress evidence which was held to have been obtained in violation of the Fourth Amendment in the criminal proceedings against Savard-Henson, also applies to the administrative proceedings concerning her employment.

## BACKGROUND

In April 1998, the Omaha Police Department was called by Savard-Henson's supervisors after several coemployees, who wanted to remain anonymous, provided information to Savard-Henson's supervisors about her possession and distribution of marijuana. The supervisors discussed what to do with this information and finally decided to turn it over to the police. The police were told that Savard-Henson worked for the City in the public works department and that other employees had observed suspicious activity involving Savard-Henson and another City employee named "Jim Thompson." The police were provided with Savard-Henson's address and the make and model of her personal vehicle.

On May 8, 1998, Omaha police officers followed Savard-Henson and her husband from their residence to her husband's place of employment and then to Savard-Henson's place of employment, where the officers set up surveillance on her vehicle. The officers soon observed Savard-Henson and Thompson arrive in a City vehicle and park next to her personal vehicle. The officers then saw Savard-Henson retrieve an item from her personal vehicle. At this point, the officers made contact with her and Thompson. After a drug dog alerted to the presence of drugs in the vehicles, the officers found 2½ marijuana cigarettes, several marijuana cigarette butts, and a small quantity of methamphetamine. Thereafter, Savard-Henson was taken to the police station for booking. The legality of the search of the vehicles is not in issue.

The officers believed they had probable cause for the issuance of a search warrant for Savard-Henson's residence because they had followed Savard-Henson and her husband from their residence and thought it likely that additional quantities of mari-

juana or methamphetamine would be located at their residence. The officers also relied on the information from the confidential informants, which they believed was another ground for the issuance of a warrant. An affidavit was completed, and a search warrant for Savard-Henson's residence was issued by a county court judge.

At Savard-Henson's residence, officers located obviously incriminating evidence of a marijuana growing operation, including 33 marijuana plants, high intensity lamps, scales, and reflectors. The officers also discovered approximately $10,000 worth of City property which had apparently been taken by either Savard-Henson or her husband, also a City employee. Among the items were 20 police cruiser stickers, an auto leveler, coils of wire, a street lamp assembly, street signs, traffic light heads, electrical junction boxes, and circuit board components.

Savard-Henson was charged with possession of a controlled substance and manufacturing marijuana. At her criminal trial, pursuant to an order dated November 17, 1998, the district court for Douglas County suppressed all evidence found at Savard-Henson's residence, because

> the reliability of the [informants] was not established in connection with the affidavit requesting the issuance of a search warrant for [Savard-Henson's] residence, nor did the evidence seized as a result of the search of the City-owned truck and [Savard-Henson's] personal vehicle provide the police with probable cause sufficient to assume that it was likely that illegal drugs or narcotics would be found in the home of [Savard-Henson].

Most of the criminal charges against Savard-Henson were thereafter dismissed on May 29, 1998.

On June 1, 1998, Savard-Henson's employment with the City was terminated. Savard-Henson appealed the termination to the Board. A hearing was held on December 21, where each side adduced evidence. The only criminal charge left at the time of the Board's hearing was possession of methamphetamine. The City planned to introduce the evidence which was suppressed in the criminal proceedings by the district court. Savard-Henson filed a motion with the Board to suppress and argued that the doctrine of res judicata applied because the district court sup-

pressed the evidence. Thus, her claim was that the Board had to do the same. In support of her claim that the Board should suppress the evidence, Savard-Henson argued that the police should not benefit from illegal searches, City police officers were investigating a City employee, and the Board is quasi-judicial. The City cited case law from other jurisdictions holding that the exclusionary rule does not apply to administrative proceedings. The Board decided that the exclusionary rule was applicable to administrative proceedings and suppressed the evidence stemming from the search of Savard-Henson's home.

Ultimately, the Board gave Savard-Henson a 30-day suspension without pay and ordered her to continue counseling for her drug addiction for a period of at least 3 years. In so finding, the Board took into consideration that Savard-Henson was in possession of two marijuana cigarettes and methamphetamine (evidence gathered from the unchallenged vehicle searches) but had been an exemplary employee of the City for over 20 years and had voluntarily sought and received drug treatment.

The City appealed the Board's decision to the district court for Douglas County via a petition in error. On May 3, 1999, the district court affirmed the Board's decision. The court found that "the city's [sic] bound by the due process requirements, which, in this case, would exclude the illegally seized evidence."

## ASSIGNMENT OF ERROR

The City asserts that the district court erred in concluding that the Fourth Amendment exclusionary rule applied to disciplinary appeals being heard by the Board, an administrative body.

## STANDARD OF REVIEW

The standard of review in an error proceeding involving an administrative agency is that both the district court and an appellate court review the record to determine whether the agency acted within its jurisdiction and whether there is some competent, relevant evidence to support the decision. *Mathes v. City of Omaha*, 254 Neb. 269, 576 N.W.2d 181 (1998).

The Supreme Court has defined "competent evidence" to be that which is admissible and relevant on the point in issue or, stated another way, admissible and tending to establish a fact in issue. *Mathes v. City of Omaha, supra.* "Relevant evidence" is

defined as that evidence which has any tendency to make the existence of any fact that is of consequence to the determination of an action more probable or less probable than it would be without the evidence. Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995); *Mathes v. City of Omaha, supra.*

Regarding questions of law, an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000); *Harmon v. Irby Constr. Co.*, 258 Neb. 420, 604 N.W.2d 813 (1999).

## ANALYSIS

*Jurisdictional Issue.*

Although not assigned as error, we first address Savard-Henson's assertion that we lack jurisdiction to hear this case because the City filed its petition in error with the district court on January 13, 1999, even though the written decision of the Board was not rendered until January 20, 1999. Savard-Henson argues that the City's appeal was premature and did not conform to the requirement of Neb. Rev. Stat. § 25-1931 (Reissue 1995) that such an appeal be filed "within thirty days after the rendition of the judgment or making of the final order complained of." However, the record contains the minutes from the Board's December 21, 1998, meeting, which documents the proceedings plus the Board's vote on Savard-Henson's appeal. The record shows that after the Board's hearing, during which each side presented evidence regarding whether Savard-Henson's employment should be terminated, the members went into "executive session" for a little over an hour. When the members returned, the chairperson moved to sustain Savard-Henson's appeal with a 30-day suspension without pay, after which she would be reinstated and be required to participate in counseling and random drug testing. The Board then voted, and the motion carried by a unanimous vote. Thus, the Board's final decision regarding Savard-Henson's appeal was made on December 21, 1998.

In *Brown v. City of Omaha*, 179 Neb. 224, 137 N.W.2d 814 (1965), the personnel board held a hearing on an appeal from the dismissal of a city employee. The board announced its decision to deny the appeal in the open hearing, but did not reduce that

decision to writing until a later time. The court held that the time to petition the district court for review of the board's decision commenced on the date the board announced its decision, rather than the later date of the written report. The court found that after the decision, nothing remained to be done except the administrative act of reducing that order to writing and transmitting it to the discharged employee.

In *Marcotte v. City of Omaha*, 196 Neb. 217, 218, 241 N.W.2d 838, 840 (1976), the court reiterated its holding in *Brown* and stated that "a judgment or order is 'rendered' by an inferior tribunal . . . when the decision is announced upon the law and the facts [and] the transmittal of the order to the parties is not an integral part of the judicial act." In *Marcotte v. City of Omaha*, the court held that the employee did not timely appeal the decision of the personnel board, and therefore the court did not acquire jurisdiction, where (1) on January 30, the personnel board held its hearing and, in the presence of the employee and his attorney, orally announced its decision; (2) on February 10 or 11, the personnel board reduced its order to writing; and (3) on March 7, the employee filed his petition in error in the district court.

Thus, under *Brown v. City of Omaha, supra*, and *Marcotte v. City of Omaha, supra*, the City in this case timely filed its petition in error on January 13, 1999, because it was within 30 days of December 21, 1998, the date the Board rendered its final decision on Savard-Henson's appeal. We have jurisdiction and turn now to the merits of the appeal.

*Exclusionary Rule's Applicability*
*to Administrative Proceedings.*

The sole issue in this case is whether the Fourth Amendment exclusionary rule applies to employment disciplinary matters appealed to an administrative body. This is an issue of first impression for a Nebraska appellate court. Furthermore, the U.S. Supreme Court has visited the issue indirectly, but has not yet directly decided whether the Fourth Amendment exclusionary rule is applicable in this situation.

Both the Board and the district court relied on *Mathes v. City of Omaha*, 254 Neb. 269, 576 N.W.2d 181 (1998), to

exclude the evidence at the Board's hearing. In *Mathes*, the Nebraska Supreme Court was faced with the issue of whether polygraph examination results, which are inadmissible in criminal cases, are admissible in administrative hearings. *Mathes* involved the admission of inculpatory polygraph evidence in a judicial review of a police personnel decision. The court held that polygraph results are inadmissible for the purpose of attempting to show deception in a proceeding before an administrative agency of a municipal government. The court based its decision on prior case law which found that the scientific principles involved in the use of such examination were still in the experimental stage and had not yet received general scientific acceptance and that experimenting psychologists themselves admitted that a wholly accurate polygraph examination was yet to be perfected. See, *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990); *Boeche v. State*, 151 Neb. 368, 37 N.W.2d 593 (1949). See, also, *State v. Dean*, 246 Neb. 869, 523 N.W.2d 681 (1994) (under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), proponent of scientific evidence must prove general acceptance by relevant scientific community), *cert. denied* 515 U.S. 1123, 115 S. Ct. 2279, 132 L. Ed. 2d 282 (1995). The *Frye* test remains the standard in Nebraska. *State v. Carter*, 255 Neb. 591, 586 N.W.2d 818 (1998). Thus, *Mathes* is premised upon the shortcomings in the underlying "science" of lie detection.

In *State ex rel. NSBA v. Miller*, 258 Neb. 181, 602 N.W.2d 486 (1999), the court said that polygraph examinations have been held inadmissible in both administrative and criminal proceedings, citing *Mathes v. City of Omaha, supra*. Thus, the premise of *Mathes* is that polygraph results are inadmissible evidence in administrative hearings due to their questionable accuracy and reliability. Therefore, *Mathes* does not determine the issue in this appeal, because here the reliability, scientific or otherwise, of the disputed evidence is not involved in the determination of its admissibility.

In contrast to the rationale for exclusion in *Mathes*, evidence seized in violation of the Fourth Amendment is suppressed in criminal matters as a means of deterring unlawful police conduct, not because the evidence is unreliable, inaccurate, or not probative of the proposition for which it is offered.

The exclusionary rule was adopted to "effectuate the Fourth Amendment right of all citizens 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .' Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure."

*Grames v. Illinois State Police,* 254 Ill. App. 3d 191, 200, 625 N.E.2d 945, 952, 192 Ill. Dec. 790, 797 (1993), quoting *United States v. Calandra,* 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974).

The U.S. Supreme Court has determined that the primary purpose of the exclusionary rule is to deter future conduct on the part of law enforcement officials. See, e.g., *United States v. Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). Furthermore, the Court has stated that "[a]s with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra,* 414 U.S. at 348. But, even in criminal trials, there are exceptions to the exclusionary rule. For example, "[e]vidence obtained in violation of the Fourth Amendment and inadmissible in the prosecution's case in chief may be used to impeach a defendant's direct testimony." *United States v. Leon,* 414 U.S. at 910, citing *Walder v. United States,* 347 U.S. 62, 74 S. Ct. 354, 98 L. Ed. 503 (1954). Moreover, in *United States v. Leon, supra,* the Court found that the Fourth Amendment exclusionary rule should not be applied to bar evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. This is the precise situation here. The evidence was seized by police officers acting under a warrant issued by a county court judge, but later invalidated by a district judge in the course of the criminal proceedings against Savard-Henson.

The U.S. Supreme Court has visited the issue of whether the exclusionary rule is applicable in other proceedings which are related in some manner to criminal proceedings in which evidence was suppressed by use of the exclusionary rule. In *United States v. Calandra, supra,* the Court found that evidence seized in violation of the Fourth Amendment was not barred in grand

jury proceedings by the exclusionary rule. In *United States v. Janis*, 428 U.S. 433, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976), the Court held that unlawfully seized evidence was admissible in a civil tax assessment proceeding. In *INS v. Lopez-Mendoza*, 468 U.S. 1032, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984), involving a civil deportation proceeding, the Court found that the exclusionary rule did not apply. These cases suggest that the exclusionary rule does not automatically transfer from the criminal arena to the civil.

In *INS v. Lopez-Mendoza, supra*, the Court discussed its holding in *United States v. Janis, supra*, which provided for a balancing test to determine whether or not the exclusionary rule should be used in a particular proceeding. The Court stated:

> [T]he Court recognized in *Janis* that there is no choice but to weigh the likely social benefits of excluding unlawfully seized evidence against the likely costs. On the benefit side of the balance "the 'prime purpose' of the [exclusionary] rule, if not the sole one, 'is to deter future unlawful police conduct.' " . . . On the cost side there is the loss of often probative evidence and all of the secondary costs that flow from the less accurate or more cumbersome adjudication that therefore occurs.

*INS v. Lopez-Mendoza*, 468 U.S. at 1041. Thus, where the costs of applying the exclusionary rule exceed its benefits, it should not be applied. *Id.*

Most recently, in *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998), the Court held that the exclusionary rule did not bar evidence seized in violation of the Fourth Amendment at parole revocation proceedings. The Court reasoned that application of the exclusionary rule would "alter the traditionally flexible, administrative nature of parole revocation proceedings." 524 U.S. at 364. The Court also pointed to several factors unique to parole revocation proceedings, including that such hearings do not deprive individuals of absolute liberty, that such boards are usually composed of laypersons, and that traditional evidence rules are not used. Regarding the deterrent purpose of the exclusionary rule vis-a-vis a parole hearing, the Court stated:

> Where the person conducting the search is a police officer, the officer's focus is not upon ensuring compliance with parole conditions or obtaining evidence for introduction at administrative proceedings, but upon obtaining convictions of those who commit crimes. The noncriminal parole proceeding "falls outside the offending officer's zone of primary interest." *Janis, supra*, at 458. Thus, even when the officer knows that the subject of his search is a parolee, the officer will be deterred from violating Fourth Amendment rights by the application of the exclusionary rule to criminal trials.

*Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. at 368.

Several state appellate courts have interpreted the Supreme Court's decisions in this area to find that the exclusionary rule is inapplicable in administrative proceedings. In *Grames v. Illinois State Police*, 254 Ill. App. 3d 191, 625 N.E.2d 945, 192 Ill. Dec. 790 (1993), a special agent of the state police sought administrative review of the decision of the state police merit board, which discharged the agent for violations of various departmental rules. At the initial hearing, the agent asserted that items found by the police in her bathroom while she was unconscious after a suicide attempt should be suppressed because they were illegally seized under the Fourth Amendment. The hearing officer denied the agent's motion to suppress and found that the various violations on the part of the agent had been proved. The merit board adopted the hearing officer's findings and discharged the agent. On appeal, the Appellate Court of Illinois held that the exclusionary rule suppressing evidence obtained as a result of an unlawful, warrantless search does not apply in the context of administrative discharge hearings. In its detailed opinion, the court noted that "[t]he general rule in a criminal proceeding is that statements and other evidence obtained as a result of an unlawful, warrantless search are subject to suppression if the link between the evidence and the unlawful conduct is not too attenuated." *Grames v. Illinois State Police*, 254 Ill. App. 3d at 199, 625 N.E.2d at 952, citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984). After balancing the factors found in the Supreme Court's decision in *INS v. Lopez-Mendoza, supra*, the Illinois court found:

The damage to the operation of an effective State Police force would far outweigh any benefit which would result from application of the exclusionary rule. To extend the rule would effectively prohibit the introduction and consideration of relevant and probative evidence and hamper the Board's ability to enforce departmental rules and deter and punish inappropriate conduct. The instant hearing did not determine the guilt or innocence of plaintiff as in a criminal proceeding; it was an administrative proceeding evaluating whether her conduct amounted to a violation of departmental rules.

*Grames v. Illinois State Police*, 254 Ill. App. 3d at 201-02, 625 N.E.2d at 954.

In *Sheetz v. City of Baltimore*, 315 Md. 208, 553 A.2d 1281 (1989), the court held that narcotics and drug paraphernalia which were unlawfully seized were admissible in a correctional officer's discharge proceedings even though the evidence had earlier been suppressed by the criminal court. The Court of Appeals of Maryland, when asked to determine whether the exclusionary rule applied in administrative discharge proceedings, found that the deterrent effect of the exclusionary rule was minimal in a discharge proceeding and therefore the rule did not apply. The court distinguished a discharge proceeding from a criminal proceeding as follows:

Administrative discharge proceedings are typically designed to evaluate employees' actions as they relate to future job performance, rather than to punish employees for past wrongs. *See Garrett v. Lehman*, 751 F.2d 997, 1002 (9th Cir. 1985) ("The function of [military discharge] proceedings is to determine eligibility for further military service; not to punish for past wrongs."); *Governing Bd. of Mountain View Sch. Dist. v. Metcalf*, 36 Cal. App. 3d 546, 111 Cal. Rptr. 724, 727 (1974) (holding that the primary purpose of discharging a teacher is to protect his students, rather than to punish the teacher).

*Sheetz v. City of Baltimore*, 315 Md. at 214, 553 A.2d at 1284.

However, the Maryland court further held that "such evidence is inadmissible in civil administrative discharge proceedings where the defendant establishes that the police were

improperly motivated to illegally seize evidence to benefit civil proceedings." *Id.* at 216, 553 A.2d at 1285. The court noted some of the factors which courts and commentators examine when considering the motivation behind an improper search and seizure, the fruits of which are offered in a civil proceeding. These include, but are not limited to (1) whether, at the time of the illegal search, the police were aware of the potential effect of using such evidence in civil proceedings; (2) whether the severity of the consequences of civil proceedings roughly parallel or exceed that of the criminal proceedings; (3) whether a reasonable officer would have believed the search to be a proper one; (4) whether there was an agreement between the police and another party to pursue the investigation which led to the improperly obtained evidence; and (5) whether the police had a special interest in the case. *Id.* Finding no evidence of a "civil motivation" behind the invalid search, the Maryland court allowed the use of the evidence.

In *Miller v. City of Little Rock*, 23 Ark. App. 91, 743 S.W.2d 9 (1988), the police had a warrant to search an employee's residence and found marijuana. He was charged with the manufacture and possession of a controlled substance and possession with intent to deliver. After an evidentiary hearing, the employee was terminated from his position as a city firefighter. In the subsequent criminal proceedings, the criminal court suppressed the evidence obtained pursuant to the search warrant, because it was not based upon probable cause. On appeal of the termination of his employment, the employee argued that the evidence excluded from the criminal case should also have been excluded in the termination appeal. The Arkansas court held that the marijuana, seized pursuant to a search warrant, was admissible in a judicial review of the administrative discharge of the employee, because the exclusionary rule did not apply to noncriminal proceedings. The court pointed out that the U.S. Supreme Court has extended the exclusionary rule to include forfeiture proceedings. See *Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S. Ct. 1246, 14 L. Ed. 2d 170 (1965) (holding that exclusionary rule applied to forfeiture proceedings because, although technically civil, they are brought by the prosecuting attorney and are criminal in both substance and effect). Compare *State v. Franco*, 257

Neb. 15, 594 N.W.2d 633 (1999) (holding that forfeiture proceedings are criminal in nature). However, the court in *Miller v. City of Little Rock, supra,* pointed out that the U.S. Supreme Court has not been inclined to extend the exclusionary rule to proceedings of a noncriminal nature. See, *United States v. Calandra,* 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974) (holding that exclusionary rule is not applicable in grand jury proceedings); *United States v. Janis,* 428 U.S. 433, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976) (holding that exclusionary rule is not applicable in federal tax assessment proceeding); *INS v. Lopez-Mendoza,* 468 U.S. 1032, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984) (holding that exclusionary rule is not applicable in civil deportation proceedings); *Pennsylvania Bd. of Probation and Parole v. Scott,* 524 U.S. 357, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998) (holding that exclusionary rule is not applicable in parole revocation proceedings).

We note that a minority of state courts have found that the exclusionary rule does apply in administrative or civil proceedings. See, *Finn's Liquor Shop v. State Liquor Auth.,* 24 N.Y.2d 647, 249 N.E.2d 440, 301 N.Y.S.2d 584 (1969), *cert. denied* 396 U.S. 840, 90 S. Ct. 103, 24 L. Ed. 2d 91 (applying exclusionary rule to administrative proceedings before liquor authority with respect to imposition of penalties on license holders); *Board of License Com'rs of Tiverton v. Pastore,* 463 A.2d 161 (R.I. 1983) (applying exclusionary rule finding that although technically civil proceeding, liquor license revocation proceeding is in effect quasi-criminal proceeding because its purpose is to penalize for commission of offense against law); *State Patrol v. State, DPS,* 437 N.W.2d 670, 676 (Minn. App. 1989) (holding that exclusionary rule applied to exclude evidence in state trooper's discharge hearing, finding that "we cannot allow one government agency to use the fruits of unlawful conduct by another branch of the same agency to obtain an employee's dismissal").

Because the exclusionary rule has a limited purpose, to deter police misconduct, we do not believe its reach should be extended to administrative proceedings where that purpose is not served. Therefore, we adopt what we perceive as the majority view that the exclusionary rule generally does not apply to administrative proceedings. However, we hold that the balanc-

ing test from *INS v. Lopez-Menodza, supra,* must be applied which weighs the likely social benefits of excluding unlawfully seized evidence against the likely costs. The evidence must also be relevant, probative, and aid the administrative agency in enforcing departmental rules or in deterring and responding to inappropriate employee conduct. *Grames v. Illinois State Police,* 254 Ill. App. 3d 191, 625 N.E.2d 945 (1993). However, if the employee shows that the police had an improper motive in obtaining the illegally seized evidence, for example solely to benefit the administrative proceeding, the evidence would not be inadmissible. *Sheetz v. City of Baltimore,* 315 Md. 208, 553 A.2d 1281 (1989) (listing various factors to consider in determining this issue). Insofar as the officer's motivation is concerned, as long as the administrative proceeding in which the evidence is offered "falls outside the offending officer's zone of primary interest," the exclusionary rule should not be applied on the ground that the police who seized the material at issue had an improper motive. See *United States v. Janis,* 428 U.S. at 458. To summarize, the exclusionary rule generally does not apply to administrative proceedings when the benefits of exclusion are outweighed by its cost, so long as the police did not have a "civil" motive in making the seizure and the evidence is relevant to aid in enforcing administrative rules or responding to inappropriate employee conduct.

We next address Savard-Henson's argument that since the Omaha police and the Board are part of the same sovereign entity, the exclusionary rule should be applied to effectuate the purpose of the rule. We return again to *INS v. Lopez-Mendoza,* 468 U.S. 1032, 1043, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984), and a close reading of that case reveals that although the Court noted that "the exclusionary rule is likely to be most effective when applied to . . . 'intrasovereign' violations," the Court nonetheless did not extend the exclusionary rule to suppress evidence seized by the Immigration and Naturalization Service (INS) in violation of the Fourth Amendment to civil deportation proceedings conducted by the INS itself. Therefore, the exclusionary rule is not automatically applicable in a civil proceeding involving an intrasovereign violation. See, also, *Garrett v. Lehman,* 751 F.2d 997 (9th Cir. 1985) (holding that evidence

unlawfully seized by military police was not barred by exclusionary rule in military discharge proceeding); *Tirado v. C.I.R.*, 689 F.2d 307 (2d Cir. 1982), *cert. denied* 460 U.S. 1014, 103 S. Ct. 1256, 75 L. Ed. 2d 484 (1983) (holding that evidence allegedly seized unlawfully by federal agents for use in narcotics prosecution was not barred by exclusionary rule in subsequent federal civil tax proceeding where evidence was not seized with participation or collusion of, or in contemplation of use by, agents for proceeding in which evidence was presented).

We now balance the costs and benefits of applying the exclusionary rule in this case. Savard-Henson argues that if we do not suppress the evidence, the police benefit from unconstitutional searches which eviscerates the U.S. Constitution and the Bill of Rights. But, the purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim, but to prevent future wrongs by the police. See *United States v. Calandra*, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). In the instant case, the deterrent purpose of the exclusionary rule was already satisfied because the police "lost" the possibility of a criminal conviction when the district court suppressed the evidence in the criminal case against Savard-Henson. To again suppress such evidence in an administrative hearing involving the potential termination would serve no further meaningful deterrent purpose beyond that already served by the suppression of the evidence in the district court criminal proceedings. Moreover, whether there really was "wrongful police conduct" is a matter for debate, because the search was with a warrant issued by a judge, albeit later invalidated by a higher court. The presence of the warrant is a significant factor because this is not a case where police officers proceeded heedlessly without seeking a search warrant.

On the other hand, using such evidence in the administrative proceeding clearly provides some benefit. The evidence excluded in this case was made up largely of photographs of Savard-Henson's residence and property, which showed the marijuana growing operation plus numerous items of City property. Savard-Henson's employment was originally terminated on the bases of the felony criminal charges against her, her use of drugs on City property, the marijuana growing operation, and

the stolen property. The evidence which the Board suppressed is clearly relevant and obviously provides a logical basis upon which to determine whether Savard-Henson's employment with the City should continue. The evidence assists the Board in enforcing its rules and in deterring similar inappropriate conduct of other City employees. In this regard, we believe that the evidence tending to show theft of City property is particularly important. To exclude the evidence tends to produce a "false picture" of Savard-Henson as a trustworthy employee, when she arguably is not, although we obviously do not prejudge that impact of the evidence on her employment status. And, while the same "false picture" of guilt or innocence could be said to occur when contraband is suppressed in a criminal prosecution, this is the price society occasionally pays because we use the exclusionary rule to ensure that police searches stay within the boundaries of the Fourth Amendment. In balancing the social benefits of excluding the evidence in the employment setting against the likely costs, we find that there is minimal deterrent effect on police misconduct, but substantial benefit in accurately assessing Savard-Henson's employment status with the City.

In reaching this conclusion, we note the lack of evidence of bad faith motivation on the part of the police officers to gather unlawful evidence to further the City's case against Savard-Henson with regard to the termination of her employment or her continuing employment with the City. The police do not "benefit" from either Savard-Henson's continued employment or the termination of her employment.

Finally, we do not think this issue can be properly decided without considering *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). In that case, the U.S. Supreme Court created the "good faith" exception to the Fourth Amendment exclusionary rule. *Leon* holds that the Fourth Amendment exclusionary rule should *not* be applied to bar evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, but ultimately found to be invalid. The *Leon* Court pointed out:

> In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically suffi-

cient. "[O]nce the warrant issues, there is literally nothing more the [officer] can do in seeking to comply with the law." . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

(Citation omitted.) 468 U.S. at 921.

The exception in *Leon* is in part based on the concept that "when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system." 468 U.S. at 908. The Court rejected the notion that " 'anything which deters illegal searches is thereby commanded by the Fourth Amendment.' " 468 U.S. at 910. The Court pointed out that " 'the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served' " in an effort to apply the rule discriminately so as not to " 'generat[e] disrespect for the law and administration of justice.' " 468 U.S. at 908. The Court found that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." 468 U.S. at 922. The Court concluded that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918.

And while we obviously are not reviewing whether the district court properly suppressed the evidence in the criminal case, the "good faith" exception to the exclusionary rule as set forth in *Leon* strongly militates against using the exclusionary rule in this administrative context. Savard-Henson does not claim that the police purposefully or deliberately violated her constitutional rights. The Omaha police operated with a warrant issued by a judge, and the deterrence of future unlawful police conduct has already occurred in the criminal case.

## CONCLUSION

Having found that the exclusionary rule should not have been applied in this administrative employment status case, we

remand the matter to the district court with instructions to order a new hearing before the Board with directions to the Board to receive and consider the suppressed evidence and then decide Savard-Henson's appeal from the termination of her employment anew.

REVERSED AND REMANDED WITH DIRECTIONS.