IN RE INTEREST OF COREY P. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
JENNIFER P., APPELLANT.

IN RE INTEREST OF MEISHA L. AND REMINGTON L.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
BRETT L., APPELLANT.

697 N.W.2d 647

Filed May 27, 2005.   Nos. S-04-1079, S-04-1100.

Thomas C. Riley, Douglas County Public Defender, and Timothy F. Shanahan for appellant Jennifer P.

Douglas R. Switzer, of Hathaway & Switzer, L.L.C., and Krisanne C. Weimer for appellant Brett L.

Stuart J. Dornan, Douglas County Attorney, Nicole Brundo Goaley, Karen Kassebaum Nelson, and Anne Armitage, Senior Certified Law Student, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Jennifer P. and Brett L. appeal from the order of the juvenile court adjudicating their respective children to be juveniles lacking proper parental care within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2004). The evidence that provided the basis for those adjudications was obtained from a warrantless search of Jennifer and Brett's residence.

The primary issue presented on appeal is whether the exclusionary rule, designed to enforce the protections of the Fourth Amendment, applies to evidence obtained in a warrantless search and submitted in a child protection proceeding.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 17, 2004, at approximately 2 p.m., Deputy Alice Meyer responded to a report of a small child wandering outside in a trailer park in Omaha, Nebraska. Meyer arrived at the trailer park and spoke with the neighbor who had reported the wandering child. The neighbor had taken the child into her trailer because the child had blue lips and was very cold. Meyer testified that the child, who was 3 years old, was wearing only a pair of pink, knit pants that were wet and smelled of urine and that she appeared to have dried food around her mouth. Meyer stated that the child also smelled of "dirty and rotting food." Meyer testified that the neighbor indicated that she had seen the child wandering outside before and pointed to a trailer where she believed the child and her siblings lived.

Meyer testified that upon visiting the trailer identified by the neighbor, Jennifer answered the door and, at Meyer's request, allowed Meyer into the residence. Meyer learned that Jennifer lived at the residence with her four biological children: Corey P., Dylan P., Jasmine P., and Bryanna L. In addition, Jennifer indicated that her fiance, Brett, and his two children, Meisha L. and Remington L., also lived at the residence.

According to Meyer, Jennifer told Meyer that Brett was out with some of the other children looking for the missing 3-year-old, Jasmine, and that Jennifer had a baby, Bryanna, in the back

room of the residence. Jennifer objected when Meyer told her that to ensure Bryanna's welfare, Meyer needed to check on her without Jennifer's being present. Meyer testified that she suspected that Jasmine had been neglected and, thus, thought other children in the residence might also be at risk.

In contrast, Jennifer testified that when Meyer asked to enter the residence, Jennifer said that she was not feeling well and was not comfortable with Meyer's entering her home. Further, Jennifer indicated that Meyer and the male officer accompanying her again told Jennifer that they needed to come into the residence and that when Jennifer again denied entry, Meyer told her that she would not be permitted to see Jasmine until she allowed the officers into her home. Jennifer testified that fearing she would not get Jasmine back, she allowed Meyer to enter the home.

Meyer testified that inside Jennifer and Brett's residence, she observed an offensive odor, similar to the smell that had been coming from Jasmine. Meyer also noticed that the house was very dirty, the kitchen sink was full of dirty dishes, and there appeared to be food items "spread out." Pictures of the residence were received into evidence, which pictures Meyer testified were accurate depictions of her observations on March 17, 2004.

Meyer described the children as dirty and testified that after finding Bryanna in a crib with a urine-soaked blanket over her and observing the conditions in the bedroom, Meyer decided to take the six children, all of whom were under the age of 10, into protective custody.

On March 18, 2004, a petition (which was later amended) was filed in the separate juvenile court, alleging that Corey, Dylan, Jasmine, and Bryanna came within the meaning of § 43-247(3)(a). On the same day, a similar petition was filed, alleging that Meisha and Remington came within the meaning of § 43-247(3)(a). Motions for temporary custody were filed, requesting the court to place the six children in the custody of the Nebraska Department of Health and Human Services (DHHS). In support of the motions, the State attached affidavits completed by Meyer. Orders for immediate custody were entered by the court on March 18, ordering that the children be placed in temporary foster care.

On April 12, 2004, the court ordered the children to remain in the temporary custody of DHHS but directed that they be allowed to return to the parental home under certain conditions. Specifically, Jennifer and Brett were instructed to, among other things, cooperate with family support services and not do anything that would delay, or lead to the unsuccessful termination of, those services; enroll their school-aged children in school; maintain a sanitary and safe home; keep the children clean; participate in a pretreatment assessment; obtain and maintain a stable source of income; and submit the children for immediate physical and dental examinations.

On August 12, 2004, the State filed a motion in each case, citing the "need for PLACEMENT OF THE CHILDREN IN THE TEMPORARY CUSTODY OF NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES FOR PLACEMENT TO EXCLUDE THE HOME OF" the parent, Jennifer or Brett. Attached to the motions, the State provided affidavits completed by a case manager from DHHS and a family support worker assigned to work with the family. In her affidavit, the DHHS case manager described in detail her observations upon visiting the home on August 12, indicating that the home was dirty, cluttered, and malodorous and recommending that the children be removed from the residence immediately. In a separate affidavit, the family support worker described her weekly visits to the home and the goals she had instructed the family to work toward. The family support worker explained that Jennifer and Brett had failed to make any progress toward the goals, that the home continued to be dirty, and that the children were sleeping on soiled mattresses with no bedding. The juvenile court ultimately entered orders for placement of the children in foster care, excluding the home of Jennifer and Brett.

Prior to the adjudication hearing, Jennifer and Brett filed motions to suppress or, alternatively, motions in limine, asking that any evidence obtained as a result of Meyer's warrantless entry into their home on March 17, 2004, be excluded as having been gathered in violation of their rights under the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution. The court overruled the motions, finding that exigent circumstances justified the search.

After the adjudication hearing, the court found Corey, Dylan, Jasmine, Bryanna, Meisha, and Remington to be within the meaning of § 43-247(3)(a). Further, the court ordered the children to remain in the temporary custody of DHHS for placement, excluding the home of Jennifer and Brett, until further order of the court.

Jennifer and Brett filed separate appeals from the order of the juvenile court. The appeals were docketed and argued separately in this court, but the underlying facts are the same. Therefore, we have consolidated the cases for purposes of disposition of these appeals.

## ASSIGNMENTS OF ERROR

Both Jennifer and Brett assign that the juvenile court erred in allowing evidence obtained during Meyer's visit to their home on March 17, 2004, to be used in the proceedings.

In addition, Jennifer assigns that the court erred in finding sufficient evidence to order the continued detention of her children and in finding sufficient evidence to support the finding that the children came within the meaning of § 43-247(3)(a). Brett does not make any sufficiency of evidence arguments.

## STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. In reviewing questions of law arising in such proceedings, an appellate court reaches a conclusion independent of the lower court's ruling. *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002).

## ANALYSIS

*Fourth Amendment Exclusionary Rule Does Not Apply in Child Protection Proceedings.*

Jennifer and Brett argue that the court erred in failing to exclude evidence obtained during Meyer's search of their home. Specifically, they argue that Meyer's entry into their home was a violation of their Fourth Amendment rights and that, thus, any evidence or information gathered during Meyer's visit should have been excluded from the proceedings. In response, the State argues that the Fourth Amendment does not apply to juvenile

proceedings and that, alternatively, even if it does apply, the remedy of exclusion should not apply to juvenile proceedings. The State also argues that exigent circumstances were present during Meyer's visit to Jennifer and Brett's home and that, thus, under that exception to the warrant requirement, the entry was reasonable.

In Nebraska, freedom from unreasonable searches and seizures is guaranteed by U.S. Const. amend. IV and Neb. Const. art. I, § 7. *State v. Kelley*, 265 Neb. 563, 658 N.W.2d 279 (2003). Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by the exigencies which justify their initiation. *State v. Allen, ante* p. 69, 690 N.W.2d 582 (2005).

The State initially argues that the Fourth Amendment should not apply in juvenile proceedings and cites cases in which this court has concluded that certain constitutional rights do not apply in juvenile cases. See, *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004) (heightened standards of Sixth Amendment Confrontation Clause are not applicable in juvenile proceedings); *In re Interest of C.P.*, 235 Neb. 276, 455 N.W.2d 138 (1990) (Sixth Amendment right to speedy trial applies only in criminal trials and thus does not apply in parental termination proceedings). However, the rights found to be inapplicable in juvenile proceedings in those cases are rights directly implicated during other court proceedings. In other words, they are procedural rights intended to govern the conduct of criminal trials. In contrast, the Fourth Amendment protections against unreasonable search and seizure are implicated whenever state action intrudes on a citizen's legitimate expectation of privacy. "The right of the people to be secure in their persons, houses, papers, and effects" applies to their persons, houses, papers, and effects, regardless of the venue of any subsequent litigation. U.S. Const. amend. IV. Instead, the question is whether, in a juvenile proceeding, those Fourth Amendment protections demand the use of the exclusionary rule as a remedy for their violation.

The exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect.

*Allen, supra.* Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure. *Id.* However, juvenile proceedings are civil rather than criminal in nature. *In re Interest of Joshua R.*, 265 Neb. 374, 657 N.W.2d 209 (2003). Application of the exclusionary rule in civil cases is not automatic. See *City of Omaha v. Savard-Henson*, 9 Neb. App. 561, 615 N.W.2d 497 (2000).

In *United States v. Calandra*, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974), the U.S. Supreme Court addressed whether to extend the exclusionary rule to grand jury proceedings. The Court stated, "[t]he purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim . . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." 414 U.S. at 347. Further, the Court said the rule's application has been restricted to areas where its remedial objectives are most effectively served. *Id.* The Court concluded that application of the rule would greatly interfere with the "effective and expeditious discharge of the grand jury's duties" and would not significantly further the goal of deterrence. 414 U.S. at 350. Therefore, the Court held that the Fourth Amendment exclusionary rule should not be extended to grand jury proceedings. *Id.*

Similarly, in *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1041, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984), the U.S. Supreme Court addressed whether to extend the exclusionary rule to civil deportation hearings and discussed the "framework for deciding in what types of proceeding application of the exclusionary rule is appropriate." The Court stated:

> Imprecise as the exercise may be . . . there is no choice but to weigh the likely social benefits of excluding unlawfully seized evidence against the likely costs. On the benefit side of the balance "the 'prime purpose' of the [exclusionary] rule, if not the sole one, 'is to deter future unlawful police conduct.'" . . . On the cost side there is the loss of often probative evidence and all of the secondary costs that flow from the less accurate or more cumbersome adjudication that therefore occurs.

*Id.,* citing *United States v. Janis,* 428 U.S. 433, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976). In *Lopez-Mendoza,* the Court weighed the costs and benefits of applying the exclusionary rule in civil deportation hearings and, finding the costs to outweigh the benefits, concluded that the rule should not apply in such proceedings.

■ We acknowledged the limited application of the exclusionary rule in *State v. Tyrrell,* 234 Neb. 901, 453 N.W.2d 104 (1990), and, citing the balancing test announced in *Janis, supra,* also stated that a court must weigh the deterrent effect of suppression against its societal costs to determine if evidence should be suppressed. Where little or no deterrence will result, suppression is inappropriate. *Tyrrell, supra.* Accord *State v. Allen, ante* p. 69, 690 N.W.2d 582 (2005) (where exclusionary rule does not result in significant deterrence, its use is not warranted). Most recently, we held that the Due Process Clause does not require that the Fourth Amendment exclusionary rule be applied to administrative license revocation proceedings. *Chase v. Neth, ante* p. 882, 697 N.W.2d 675 (2005). We noted the civil, nonpunitive nature of administrative license revocation proceedings and determined that application of the rule in such proceedings would accomplish little in terms of deterring improper police conduct, given the applicability of the rule in criminal proceedings. *Id.* In addition, we concluded that any deterrent value would be outweighed by the public health and safety interests which the administrative license revocation statutes are intended to protect. *Id.* See, also, *Hass v. Neth,* 265 Neb. 321, 657 N.W.2d 11 (2003).

■ Although we have yet to address the application of the Fourth Amendment exclusionary rule in the context of juvenile proceedings, we now utilize the balancing test set forth by the Court to determine if such application is warranted. Only if the rule does apply in the context of child protection proceedings is it necessary for us to determine whether the search involved in this case was conducted in violation of the Fourth Amendment. See *State ex rel. A.R. v. C.R.,* 982 P.2d 73 (Utah 1999). In the course of our analysis, we must consider the State's interest in the matter and the right sought to be protected, the purpose of the proceeding and the potential sanctions that could result from the proceeding, and the purpose of the search and its relationship to

the proceeding in which the rule is sought to be invoked. See *Matter of Diane P.*, 110 A.D.2d 354, 494 N.Y.S.2d 881 (1985).

We have observed that the foremost purpose and objective of the juvenile code is the protection of a juvenile's best interests, with preservation of the juvenile's familial relationship with his or her parents where the continuation of such parental relationship is proper under the law. *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004). Thus, the goal of juvenile proceedings is not to punish parents, but to protect children and promote their best interests. Application of the exclusionary rule in criminal proceedings may result in a crime's going unpunished, a price that society is willing to pay in order to protect the right to be free from unreasonable intrusions. In contrast, application of the rule in juvenile proceedings may lead to an erroneous conclusion that there has been no abuse or neglect, leaving innocent children to remain in unhealthy or compromising circumstances. See *Matter of Diane P., supra.* Any possible benefits of the exclusionary rule do not justify such a costly result in child protection proceedings.

Moreover, the potential impact on parents in such proceedings does not justify application of the exclusionary rule. The potential consequences of child protection proceedings range from an order requiring supervision of the child by a child protection agency, to leaving the child in the custody of the parents, to an order for the temporary or permanent removal of the child. These consequences are designed to protect innocent children, not to punish parents; their effect on the parents is merely collateral to their main purpose. Although parents may ultimately be prosecuted on the basis of the underlying acts of a child protective proceeding, in a criminal prosecution, any evidence obtained in an unlawful search would be inadmissible at trial. Thus, the deterrent effect of the exclusionary rule would be adequately served by the exclusion of illegally seized evidence in that context. See *id.* See, also, *Matter of Anne BB*, 202 A.D.2d 806, 609 N.Y.S.2d 111 (1994); *Care & Protection of Frank*, 409 Mass. 492, 567 N.E.2d 214 (1991); *In re Mary S.*, 186 Cal. App. 3d 414, 230 Cal. Rptr. 726 (1986); *In re Robert P.*, 61 Cal. App. 3d 310, 132 Cal. Rptr. 5 (1976).

Considering the purpose of the rule, and the State's overwhelming interest in protecting innocent children, it would be improper to exclude evidence obtained during a warrantless search in subsequent child protection proceedings. On balance, the State's interest in protecting abused or neglected children and the undesirable consequences to the children if they are left in compromising circumstances far outweigh any deterrent effect that may result from applying the exclusionary rule. We, therefore, hold that the Fourth Amendment exclusionary rule is inapplicable in child protection proceedings. Thus, it is unnecessary to consider in this case whether the search by Meyer was unreasonable under the Fourth Amendment. We conclude that the juvenile court did not err in overruling Jennifer and Brett's motions to exclude evidence obtained during Meyer's search of their home.

*Detention Hearing Issue Is Moot.*

Jennifer argues that the juvenile court erred in ordering the continued detention of her children. Jennifer asserts that the testimony offered at the detention hearing on August 18 and 25, 2004, was general and insufficient to support the order of continued detention. However, since we cannot undo the temporary detention order keeping the children in the custody of DHHS pending adjudication, the issue is moot and we need not consider this assignment of error. See *In re Interest of Phoebe S. & Rebekah S.*, 11 Neb. App. 919, 664 N.W.2d 470 (2003). If Jennifer wished to challenge the temporary detention, she should have appealed from the order of continued detention prior to adjudication.

*Order of Adjudication Was Supported by Sufficient Evidence.*

Finally, Jennifer argues that the court erred in finding her children to be within the meaning of § 43-247(3)(a). The purpose of the adjudication phase is to protect the interests of the child. The parents' rights are determined at the dispositional phase, not at the adjudication phase. *In re Interest of Sabrina K.*, 262 Neb. 871, 635 N.W.2d 727 (2001). In order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance

of the evidence. *In re Interest of Heather R. et al., ante* p. 653, 694 N.W.2d 659 (2005). The court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. See *In re Interest of Sabrina K., supra.*

In this case, the amended petitions alleged that the six children at issue come within the meaning of § 43-247(3)(a), lacking proper parental care by reason of the faults or habits of their parents in that Jasmine was found wandering alone outside without proper clothing; the home of the children was found to be in a filthy, unwholesome condition; and the children were found to be in a filthy, unwholesome condition, placing the children at risk of harm.

In support of these allegations, Meyer testified extensively about her observations when she arrived at the home of Jennifer and Brett on March 17, 2004, as previously detailed. Several photographs, which Meyer testified were accurate depictions of the residence, were offered and received into evidence. Meyer's testimony and the photographs of the residence offered at the adjudication hearing provide sufficient evidence to support the allegations in the amended petition.

Although Jennifer testified that the photographs were not accurate depictions of the residence and implied that law enforcement had created some of the mess illustrated in the photographs, we give deference to the juvenile court's explicit decision to accept Meyer's testimony in this matter. When the evidence is in conflict in a juvenile case, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Heather R. et al., supra.* Having reviewed the photographs and other evidence in the record, we find sufficient evidence to conclude, as did the juvenile court, that the children come within the meaning of § 43-247(3)(a).

## CONCLUSION

We find on our de novo review that the evidence supports the juvenile court's finding that the children at issue come within the meaning of § 43-247(3)(a). Because the exclusionary rule does not apply in child protection proceedings, the juvenile

court did not err in overruling the Fourth Amendment objections to that evidence. Thus, we affirm the adjudication orders of the juvenile court.

AFFIRMED.