In re Interest of Samantha C., a child
under 18 years of age.
State of Nebraska, appellee, v.
Samantha C., appellant.
___ N.W.2d ___

Filed March 7, 2014.    No. S-13-533.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Statutes.** The meaning of a statute is a question of law.
3. **Juvenile Courts: Parental Rights.** The foremost purpose and objective of the Nebraska Juvenile Code is the protection of a juvenile's best interests, with preservation of the juvenile's familial relationship with his or her parents where the continuation of such parental relationship is proper under the law. The goal of juvenile proceedings is not to punish parents, but to protect children and promote their best interests.
4. **Juvenile Courts: Minors.** The Nebraska Juvenile Code must be construed to assure the rights of all juveniles to care and protection.
5. **Legislature: Intent.** The intent of the Legislature is expressed by omission as well as by inclusion.

Appeal from the County Court for Dodge County: Kenneth Vampola, Judge. Affirmed.

Shane J. Placek, of Sidner Law, for appellant.

Sara VanBrandwijk, Deputy Dodge County Attorney, for appellee.

Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

Samantha C. appeals from a juvenile court order adjudicating her as being "habitually truant from . . . school."[1] She primarily argues that the State was required to first prove her school's compliance with the remedial measures set forth in a compulsory education statute.[2] Because (1) the Nebraska

[1] Neb. Rev. Stat. § 43-247(3)(b) (Reissue 2008).

[2] See Neb. Rev. Stat. § 79-209 (Cum. Supp. 2012).

Juvenile Code and the compulsory education statutes are separate statutory enactments with distinct purposes and goals and (2) the State met its burden of proving that Samantha was habitually truant from school, we affirm the court's order.

## BACKGROUND

By filing a petition with the county court for Dodge County, Nebraska, sitting as a juvenile court, the State invoked the court's "exclusive original jurisdiction"[3] of Samantha. The State's petition alleged that Samantha was a juvenile as defined by § 43-247(3)(b) for being habitually truant from school. The petition, filed on March 11, 2013, specifically alleged that as of February 28 of the 2012-13 school year, Samantha had missed 48.14 days of school.

At the juvenile court's hearing on the State's petition, the guidance director for Samantha's school explained the circumstances of a referral she made to the county attorney regarding Samantha's school attendance. She testified that she made the referral on February 28, 2013. As of that date, Samantha had accumulated 48.14 days of absences from school. According to the guidance director, absences were classified as excused if the school received a doctor's note. If no doctor's note was provided, the absence was unexcused. She testified that 27 days of Samantha's absences were unexcused for that reason.

The guidance director revealed that she first became concerned regarding Samantha's attendance in September 2012. She testified that the school sent Samantha's parents several letters informing them of her current number of absences and warning them that the school was required to address excessive absences and make a report to the proper authorities. The letters advised Samantha and her parents that state law provides that "students cannot miss more than 5 days per quarter or 20 days in a school year for any reason." They further explained that absences caused by serious illness qualified as "excused" absences and requested that Samantha's parents provide the school with doctors' notes for her absences.

---

[3] § 43-247.

The record shows that five of these letters were sent to Samantha's parents. The first was sent on September 19, 2012, when Samantha had missed 9 days of school. Others followed on November 13, when she had missed 16.429 days; on January 7, 2013, when she had missed 27.571 days; on January 11, when she had missed 31.5 days; and on February 12, when she had missed 43.142 days.

The record also shows that the county attorney's office sent a letter to Samantha's parents on January 18, 2013, warning them that it would consider filing a petition in juvenile court and charges against them if there was not a significant improvement in Samantha's attendance.

The guidance director explained that the school had requested Samantha's medical records in order to determine that her absences were not excused by serious illness. The school received records covering Samantha's medical visits from March 22, 2012, to January 23, 2013. The medical records detail instances of sickness characterized by cough, sore throat, vomiting, or fever, and chronic abdominal pain. However, according to the guidance director, two statements in the medical records showed that Samantha's absences were not excused by serious illness. The February 12, 2013, medical summary contained the statement, "Get her back to school as soon as possible." The February 25 summary stated, "School tomorrow."

Samantha's attorney questioned the guidance director regarding the school's definition of truancy. The director testified that the school defined truancy as "skipping school or not being in school for a reason." She also explained that if a parent or guardian grants a child permission to miss school, the school does not consider the child to be truant. She further admitted that it appeared Samantha's parents had consented to her absences from school.

The guidance director also acknowledged that to her knowledge, no meeting between the school attendance officer, school social worker, or the school principal and Samantha's parents had ever taken place to discuss an attendance plan. She further stated that she was unaware if any of the other measures the school had in place for chronically ill children, such as

providing a home tutor or arranging for parents to pick up homework, had been offered to Samantha. She also admitted that she did not know if an educational evaluation had been performed for Samantha during 2012 and that she was unaware if Samantha had ever seen the school psychologist.

Based upon the guidance director's testimony, Samantha argued that the juvenile court could not adjudicate her under § 43-247(3)(b), because the school had failed to provide her with the services outlined in § 79-209 to address excessive absenteeism. Section 79-209(2) requires school districts to develop a written policy on excessive absenteeism stating "the number of absences or the hourly equivalent upon the occurrence of which the school shall render all services in its power to compel such child to attend some public, private, denominational, or parochial school." Section 79-209(2) further provides that such services shall include one or more meetings between school officials and the child's parent or guardian to report and solve excessive absenteeism, educational counseling to address possible curriculum changes, educational evaluation to diagnose and treat any conditions contributing to excessive absenteeism, and investigation by the school social worker. Thus, because the State did not present any evidence that the school had provided her with these services before making the attendance referral, Samantha argued that the State did not meet its burden of proof and could not adjudicate her under § 43-247(3)(b).

The juvenile court entered an order finding that Samantha was a juvenile as defined by § 43-247(3)(b) for being habitually truant from school. The court found that as of February 28, 2013, Samantha had been truant with 27 unexcused absences from school. The court also rejected Samantha's argument that in order to adjudicate her under § 43-247(3)(b), the State was first required to prove her school's compliance with the compulsory education statutes. The court opined that the compulsory education statutes and the juvenile code are neither mutually inclusive nor mutually exclusive. Relying upon § 79-209(4), which states that "[n]othing in this section shall preclude a county attorney from being involved at any stage in the process to address excessive absenteeism," the court

found that the school's failure to comply with the compulsory education statutes did not preclude the county attorney from proceeding in juvenile court.

Samantha timely appealed the juvenile court's order. We moved the case to our docket pursuant to statutory authority.[4]

## ASSIGNMENTS OF ERROR

Samantha assigns that the juvenile court erred in (1) determining that the State proved the allegations of the petition "by a preponderance of the evidence" and (2) concluding that Samantha's school and the State were not required to "attempt remedial measures specifically outlined under [§] 79-209 prior to pursuing court intervention."

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[5]

[2] The meaning of a statute is a question of law.[6]

## ANALYSIS

At oral argument, Samantha's counsel conceded that the correct burden of proof was proof beyond a reasonable doubt. The State's counsel agreed, and so do we. This is clear both in statute[7] and in case law.[8] And the juvenile court made the requisite finding using the correct standard. With that understanding, we turn to Samantha's specific arguments.

### ADJUDICATION UNDER § 43-247

Samantha argues that she was not truant under her school's definition of truancy. We do not have the school's written policy in our record. Samantha relies on the guidance director's

---

[4] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[5] *In re Interest of Candice H*., 284 Neb. 935, 824 N.W.2d 34 (2012).

[6] *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

[7] See Neb. Rev. Stat. § 43-279(2) (Reissue 2008).

[8] See, e.g., *In re Interest of Joseph S*., 13 Neb. App. 636, 698 N.W.2d 212 (2005).

testimony that if a parent or guardian granted a child permission to miss school, the school did not consider the child to be truant. Samantha also asserts that the school's policy regarding unexcused absences was unclear. While we agree that Samantha's parents apparently consented to her absences, we reject her assertion that the school's policy determined whether she was "habitually truant" under § 43-247(3)(b).

Section 79-209(3) permits a school attendance officer to make a report to the county attorney if a child is absent more than 20 days per year or the hourly equivalent, even if all of the absences are excused due to illness or otherwise. It mandates such a report if the child exceeds the 20-day absence limitation and "*any* of such absences are not excused."[9] The evidence presented at the adjudication hearing was uncontroverted that Samantha's school had determined that she had accumulated 48.14 days of absences during the school year, of which 27 days were unexcused absences. Thus, Samantha's unexcused absences exceeded the 20-day threshold for all absences.

We have held that the mere fact that a juvenile is not complying with the compulsory education statutes without being first excused by school authorities establishes truancy and grants the juvenile court jurisdiction under § 43-247(3)(b).[10] Clearly, 27 days of Samantha's absences were not excused by school authorities. She had not yet reached the age of 16, the age at which a parent may elect to withdraw his or her child from school.[11] There was no evidence that she was attending any other public, private, denominational, or parochial day school or a school electing not to meet accreditation or approval requirements. The State demonstrated her noncompliance with the compulsory education statutes and thereby established beyond a reasonable doubt her status as being habitually truant under § 43-247(3)(b).

---

[9] § 79-209(3) (emphasis supplied).

[10] See *In re Interest of K.S.*, 216 Neb. 926, 346 N.W.2d 417 (1984) (superseded by statute as stated in *In re Interest of Kevin K.*, 274 Neb. 678, 742 N.W.2d 767 (2007)).

[11] See Neb. Rev. Stat. § 79-202 (Cum. Supp. 2012).

The record disproves Samantha's argument that the use of the compulsory education statutes to establish her status as being habitually truant within the meaning of § 43-247(3)(b) violated due process. She argues that she and her parents were unaware of the effect of unexcused absences within the context of § 79-209(3). But this argument clearly fails in light of the letters sent by the school to Samantha and her parents on multiple occasions. The letters notified them of Samantha's absences. The letters warned that the school was required to make an attendance referral to the county attorney when a child was absent more than 20 days of school per year and 1 or more of those absences was unexcused. The letters also explained that the school determined whether an absence was excused or unexcused based upon whether it was caused by serious illness and requested doctors' notes for Samantha's absences. Moreover, the county attorney's letter warned them that Samantha's excessive absences could result in a petition being filed in juvenile court. Thus, Samantha and her parents were given ample notice that the accumulation of more than 20 days of absences with 1 day being unexcused could result in the filing of a petition in juvenile court to adjudicate her under § 43-247(3)(b). We therefore find no due process concern in the juvenile court's determination that, with 27 unexcused absences, Samantha was habitually truant from school under § 43-247(3)(b). Upon our de novo review, we likewise find beyond a reasonable doubt that Samantha was habitually truant from school under § 43-247(3)(b).

## Compliance With § 79-209

Perhaps anticipating our conclusion on her first assignment of error, Samantha next argues that the State could not meet its burden of proof, because it did not first present evidence that her school provided her with the services outlined in § 79-209 to address excessive absenteeism. She claims that the legislative intent of the compulsory education statutes and § 79-209 was to require remedial measures in order to avoid potential court involvement. Thus, she argues that a school's failure to attempt such remedial measures prohibits an adjudication for truancy under the juvenile code. We disagree.

[3] The Nebraska Juvenile Code and the compulsory education statutes are separate statutory enactments with distinct purposes and goals. The foremost purpose and objective of the juvenile code is the protection of a juvenile's best interests, with preservation of the juvenile's familial relationship with his or her parents where the continuation of such parental relationship is proper under the law.[12] The goal of juvenile proceedings is not to punish parents, but to protect children and promote their best interests.[13] Compulsory education statutes, however, impose reasonable regulations for the control and duration of basic education in fulfillment of a state's responsibility for the education of its citizens.[14] Further, our compulsory education statutes impose criminal sanctions upon those found to be in violation of the compulsory education requirements.[15]

We have previously explored the interplay between the Nebraska Juvenile Code and the compulsory education statutes. In *State v. Rice*,[16] we rejected the assertion that the compulsory education statutes must be construed in pari materia with the juvenile court act. We reasoned that chapter 79 of the Nebraska Revised Statutes, relating to compulsory school attendance, and what was then § 43-247, regarding the neglect of children, generally do not pertain to the same subject matter. This reasoning still applies. The purposes of the juvenile code are distinct and separate from those of the compulsory education statutes. The juvenile code permits rehabilitation and protection of children. Compulsory education statutes impose basic requirements for participation in education. We therefore reaffirm that the two statutory enactments are not pari materia and need not be construed conjunctively.

[4] Because the compulsory education statutes and § 43-247 need not be construed together, we conclude that § 79-209

---

[12] *In re Interest of Corey P. et al.*, 269 Neb. 925, 697 N.W.2d 647 (2005).

[13] *Id*.

[14] See *State ex rel. Douglas v. Faith Baptist Church*, 207 Neb. 802, 301 N.W.2d 571 (1981).

[15] See Neb. Rev. Stat. § 79-210 (Reissue 2008).

[16] *State v. Rice*, 204 Neb. 732, 285 N.W.2d 223 (1979).

has no effect upon the juvenile court's exclusive and original jurisdiction over juveniles found to be within the meaning of § 43-247(3)(b). As we have already expressed, the foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests. Thus, the juvenile code must be construed to assure the rights of all juveniles to care and protection.[17] We therefore reject Samantha's assertion that the authority of the juvenile court to promote and protect a juvenile's best interests under § 43-247(3)(b) is premised upon a school's compliance with § 79-209. To accept her assertion would render the juvenile court's jurisdiction dependent upon an actor completely outside the control of the juvenile court, the juvenile, and his or her parents or guardians.

[5] Our conclusion also has support within § 79-209. Section 79-209 imposes no preconditions upon the juvenile court's jurisdiction with respect to those services it requires a school to provide to address excessive absenteeism. The intent of the Legislature is expressed by omission as well as by inclusion.[18] Had the Legislature desired to impose preconditions upon the juvenile court's jurisdiction under § 43-247(3)(b) based upon whether certain services were provided by the juvenile's school, it certainly could have done so. Further, § 79-209(4) provides that nothing within that section shall preclude the county attorney from being involved at any stage of the process to address excessive absenteeism. The Legislature's omission of any preconditions to juvenile court proceedings and its explicit disclaimer of any limitation upon a county attorney's involvement defeat Samantha's argument. A county attorney is empowered to file a petition in the juvenile court under § 43-247(3)(b), regardless of whether the services outlined in § 79-209 have been provided. We therefore hold that § 79-209 does not impose any preconditions upon the juvenile court's exclusive and original jurisdiction under § 43-247(3)(b).

---

[17] See *In re Interest of Veronica H.*, 272 Neb. 370, 721 N.W.2d 651 (2006).

[18] *In re Adoption of Kailynn D.*, 273 Neb. 849, 733 N.W.2d 856 (2007).

## CONCLUSION

The State presented sufficient evidence to establish beyond a reasonable doubt Samantha's status as being habitually truant under § 43-247(3)(b). We reject her argument that the State was first required to show that her school provided the services contemplated by § 79-209(2), and we hold that § 79-209 does not impose any preconditions upon the juvenile court's exclusive and original jurisdiction under § 43-247(3)(b). The judgment of the juvenile court is affirmed.

AFFIRMED.

HEAVICAN, C.J., participating on briefs.